BLONG, Appellant, vs. ED. SCHUSTER & COMPANY, INC., Respondent.

*November 8—December 4, 1956.*

238

For the appellant there were briefs by *George D. Prentice,* attorney, and *Richard B. Surges* of counsel, both of Milwaukee, and oral argument by *Mr. Surges.*

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Edmund W. Powell* and *Walter P. Rynkiewicz* of counsel, all of Milwaukee, and oral argument by *Mr. Rynkiewicz.*

CURRIE, J.   At the time Mrs. Blong fell and injured herself in defendant's store on November 4, 1952, she was sixty-six years of age, five feet seven or eight inches tall, and weighed 165 to 170 pounds.  She was first treated by a nurse in the employ of the defendant in a hospital room which de-

fendant maintained in its department store and was then taken by ambulance to a hospital in the city of Port Washington which was the Blong place of residence. X rays were taken which disclosed no broken bones. The attending physician diagnosed her injuries as a severe contusion to the left hip and back. The treatment prescribed was bed rest, supports for her leg, and medication for pain. Sedatives were administered for the pain while she was confined to the hospital. After she returned home, for some weeks her husband massaged her hip with liniment.

Mrs. Blong was discharged from the hospital by her attending physician after a stay of fifteen days, and when she left the hospital she was able to be up and about. Mr. Blong testified that after she got home from the hospital for about two weeks she would take hold of a chair and push it around the kitchen in front of her, using the chair as support. For some time after her return from the hospital Mr. Blong was obliged to do the housework.

Dr. Kauth, the attending physician, testified that he made one house visit upon Mrs. Blong and that about ten days after her discharge from the hospital she made a call at his office, and his last charge for services was made on November 28, 1952. Dr. Kauth was of the opinion that it probably would have been a couple of months before she would have been able to do much of her housework, although during that time she could do little things which did not involve much walking around. He also stated that walking, and standing, or sitting in a particular position on a hard chair, for any length of time would cause pain. Mrs. Blong was suffering from an arthritic condition for two or three years before the accident which was aggravated by the fall.

Mrs. Blong died January 2, 1954, from a cause wholly disassociated from the fall.

With these facts in mind, we will now consider the contention raised by counsel for plaintiff that it was error for

the trial court to have ordered a new trial unless plaintiff exercised his option to accept damages in a reduced amount.

The rule is well established in this state that a trial court has the right to grant relief where a jury has determined damages in an excessive amount, if either the verdict is due to perversity, or the amount found by the jury is not supported by the evidence. *Urban v. Anderson* (1940), 234 Wis. 280, 285, 291 N. W. 520; and *Dittman v. Western Casualty & Surety Co.* (1954), 267 Wis. 42, 51, 64 N. W. (2d) 436. In either of such situations the trial court may grant a new trial unless the plaintiff exercises the option given him by the court to remit the excess and consents to take judgment for the least amount that an unprejudiced jury, properly instructed, would under the evidence probably assess. *Kimball v. Antigo Bldg. Supply Co.* (1952), 261 Wis. 619, 623, 624, 53 N. W. (2d) 701; and *Rasmussen v. Milwaukee E. R. & T. Co.* (1951), 259 Wis. 130, 135, 47 N. W. (2d) 730.

In the instant case there was no determination by the trial court that the jury's verdict was due to perversity. Therefore, the order appealed from can only be sustained if the jury's findings of damages are not supported by the evidence. The learned trial court in the order on motions after verdict did not expressly state as a reason for granting a new trial that the amount of damages found by the jury was not supported by the evidence. However, such order did state that the trial court was convinced that such damages were excessive. We consider that this is the equivalent of a finding that such damages were not supported by the evidence. In *Dittman v. Western Casualty & Surety Co., supra,* this court affirmed a similar order for a new trial which merely recited that the found damages were excessive.

Plaintiff's counsel argue that the action of the trial court in denying one of defendant's several motions after verdict which requested a new trial "because the verdict is contrary

to the evidence" negatives any determination by the trial court that the damages were excessive because not supported by the evidence. Such motion, however, was directed to all the findings of the jury, and not just to those limited to damages, while one of the other of defendant's motions after verdict requested a new trial because "the damages are excessive." We consider that this latter motion, which was not denied by the trial court, permitted the trial court to order a new trial on the ground that the found damages were not supported by the evidence.

We are of the opinion that the trial court rightly concluded that the evidence would not support the damages in the sums found by the jury. While pain and suffering are intangibles that are extremely difficult to value in dollars and cents, we consider an allowance of $5,000 to cover Mrs. Blong's pain and suffering in the instant case to be excessive. Even more excessive was the allowance to the plaintiff husband of $3,100 for the loss of services and society. Plaintiff's counsel does not question that the sums of $1,600 for Mrs. Blong's pain and suffering and $500 for Mr. Blong's loss of services and society, accurately reflect the lowest amounts that a fair-minded jury, properly instructed, would probably assess upon the evidence presented. By the option granted, the plaintiff was not obliged to accept such reduced damages, as the option granted him a new trial in the event he failed to elect to accept such amounts.

The matter of a trial court granting a new trial for excessive damages involves an exercise of discretion. This court should not disturb such a determination unless there has been an abuse of discretion. As pointed out in *Hale v. Schultz* (1936), 223 Wis. 285, 286, 270 N. W. 46, "The judgment of the trial judge on the question of whether damages are excessive or not must be accorded considerable influence when the matter is presented to this court. He has seen the witnesses and heard the testimony."

The defendant by its motion for review seeks to have plaintiff's complaint dismissed upon its merits on the following three grounds: (1) That there is no credible evidence to support the jury's finding of a violation of the safe-place statute, sec. 101.06, on the part of the defendant; (2) that the jury had to speculate as to the cause of Mrs. Blong's fall; and (3) that the negligence of Mrs. Blong was equal to or greater than that of defendant as a matter of law. Failing a dismissal upon the merits, the motion for review then requested a new trial because of alleged error in the instructions.

The Blongs resided in a lower flat in the city of Port Washington, and a Mrs. Theresa King occupied the upper flat. On the day of the accident Mrs. King accompanied Mrs. Blong on the trip to defendant's store, which was made by Mrs. Blong for the purpose of buying some curtains. The curtains were displayed on racks in the drapery department on the fourth story of defendant's Third street store in the city of Milwaukee. These racks were made of metal tubing and were 7 feet 10 inches tall and 34 inches wide. Each bottom end of the upright tubing was set in a base or standard from five to eight inches high above the floor, which base formed the "feet" of the rack. Such bases were 23½ inches wide and projected at right angles to the rack itself. Therefore, the ends of such feet projected out approximately 11 inches in front of the curtain displayed on the rack. The purpose of such rack was to display the curtain as it would appear hung in a window. These racks were of a standard construction used in department stores throughout the country.

Mrs. King testified that these racks at the time of the accident were arranged lengthwise in rows, the space between the racks in each row being approximately one and one-half feet. She estimated the width of the aisle between the rows of racks, at the point where Mrs. Blong fell, to have been

approximately three feet. According to Mrs. King, such space was barely sufficient for her to get through and she herself almost stumbled over the feet of a rack. She admitted, however, that the feet of the racks projecting into the three-foot aisle were visible. Mrs. King had first looked at the curtains on the racks at the point where Mrs. Blong fell, and then passed on to look at curtains on other racks. While Mrs. Blong was standing at the place where she fell, Mrs. King called to her that she had discovered some other curtains of different material and asked if she would not like to see them. At the time Mrs. Blong had her back to Mrs. King but she turned around and then fell. The saleslady and Mrs. King rushed over to where Mrs. Blong had fallen and Mrs. Blong stated that she "caught her foot and fell."

About one hour after Mrs. Blong fell, while she was in the store hospital room, she arranged with Mrs. King to go back to the drapery department and buy the curtains she had been looking at. When Mrs. King arrived at the drapery department she found two men moving the curtain racks into different positions than they had been at the time the accident occurred.

During Mrs. King's cross-examination by counsel for the defendant she was asked if she could draw a diagram as to how the rows of curtain racks were set up at the time of the accident and showing the position of the "feet." She replied that she was not an artist and that she could not do so because she did not know how to draw.

Employees of the defendant testified to an entirely different arrangement of the curtain racks than testified to by Mrs. King. To substantiate the testimony of these employee witnesses, a photograph was offered and received in evidence which had been taken months after the accident occurred. However, in passing on the issue of whether there is any credible evidence to substantiate the jury's finding of the violation of the safe-place statute by defendant, it is only

necessary for this court to consider such testimony and other evidence as supports the finding. *Sturm v. Simpson's Garment Co.* (1956), 271 Wis. 587, 590, 74 N. W. (2d) 137. Therefore, the testimony of defendant's witnesses may be disregarded if Mrs. King's testimony be deemed credible.

We cannot agree with the contention of defendant's counsel that Mrs. King's testimony, as related above, is not credible. The fact that she was reluctant to make a drawing of the arrangement of the curtain racks in rows showing the projecting "feet" of the racks is a circumstance the jury could take into consideration in weighing her testimony. It certainly does not destroy the credibility of such testimony as a matter of law. If the jury believed her testimony, including that the racks were moved into a different position about one hour after the accident, it was within their province to disregard the photograph taken long after the accident. We cannot hold as a matter of law that the placing of curtain racks in rows so as to leave an aisleway only three feet wide into which the feet of the racks projected approximately 11 inches on each side was not a violation of the safe-place statute (sec. 101.06, Stats.).

The statement made by Mrs. Blong to the saleslady and Mrs. King, who hurried to her assistance when she fell, that she had "caught her foot and fell" was admissible in evidence as part of the *res gestae*. The record is entirely devoid of any evidence that there was anything in the aisle between the two rows of curtain racks where Mrs. Blong was standing at the time she fell in which she could have caught her foot other than the projecting "feet" of the curtain racks. Therefore, it was within the province of the jury to find that she did trip over the "feet" of one of the curtain racks, as this was a reasonable inference to be drawn from the evidence. In so finding the jury were not engaging in unwarranted speculation.

As to the contention raised, that the negligence of Mrs. Blong was at least equal to that of defendant as a matter of law, defendant's counsel cite the case of *Klein v. Montgomery Ward & Co.* (1953), 263 Wis. 317, 57 N. W. (2d) 188. However, in that case the plaintiff knowingly made the choice of walking over woven-wire fencing which had been spread out over the floor, which was being measured for a customer, when he could have safely walked around it, and caught his foot in the wire and fell. In the instant case the arrangement of the curtain racks in rows, as testified to by Mrs. King, was an invitation to the patrons of defendant's store to walk between such rows to examine the curtains displayed there. We see no parallel between the two cases. The question of the comparative negligence of Mrs. Blong and the defendant was properly one for the jury to determine and not this court.

The trial court instructed the jury that Mrs. Blong was a "frequenter" within the meaning of the safe-place statute at the time and place of the accident. Defendant's counsel contend that this was error, and urge, that under defendant's version of the evidence, Mrs. Blong had attempted to pass into an area where store customers had no right to be. According to the testimony of one of defendant's witnesses, some curtain racks in defendant's drapery department had been arranged in a diamond shape with a narrow space between the racks at each apex of the diamond, and that Mrs. Blong fell while attempting to pass through one of the apexes. Apparently it is defendant's position that this made her a trespasser instead of a frequenter. In the absence of some warning by sign or otherwise to Mrs. Blong, that she was not to enter the interior of such diamond in order to inspect the curtains displayed on the racks, we consider that she would still be a frequenter and not a trespasser. We, therefore, find no error in the trial court's instruction in this respect.

It is, therefore, our conclusion that all the points raised in support of defendant's motion for review are without merit.

*By the Court.*—Order affirmed.

Brown, J., took no part.