Lucas, Appellant, v. State Farm Mutual Automobile Insurance Company and others, Respondents.*

*October 3—October 30, 1962.*

* Motion for rehearing denied, with $25 costs, on January 10, 1963.

For the appellant there was a brief and oral argument by *Charles Saggio* of Milwaukee.

For the respondents there was a brief by *Kivett & Kasdorf,* attorneys, and *Nonald J. Lewis* and *John R. Henderson* of counsel, all of Milwaukee, and oral argument by *Mr. Lewis* and *Mr. Henderson.*

WILKIE, J.   The principal issue on this appeal is whether the trial court committed error in determining the jury's award of $8,000 for plaintiff's pain, suffering, and disability to be excessive and in reducing the amount of the award to $4,300.

Where a trial judge has reviewed all of the evidence and has found a jury verdict awarding damages to be excessive and has fixed a reduced amount therefor, and has determined that there should be a new trial on damages unless the plaintiff takes his option for a judgment on the reduced amount, this court will reverse his directions "only if we find an abuse of discretion on the part of the trial court." *Makowski v. Ehlenbach* (1960), 11 Wis. (2d) 38, 44, 103 N. W. (2d) 907; *Boughton v. State Farm Mut. Automobile Ins. Co.* (1959), 7 Wis. (2d) 618, 97 N. W. (2d) 401; *Puhl v. Milwaukee Automobile Ins. Co.* (1959), 8 Wis. (2d) 343, 99 N. W. (2d) 163.

In reviewing the evidence both the trial court and this court are bound by the rule stated in the case of *Kincannon v. National Indemnity Co.* (1958), 5 Wis. (2d) 231, 233, 92 N. W. (2d) 884, where our court held:

"In considering whether the jury's appraisal of damages for pain, suffering, and disability is excessive, we must of

course view the evidence in the light most favorable to plaintiff."

In analyzing the testimony as to the existence of any permanency of the injury or the likelihood that the injured person will endure future pain and suffering before recovery may be allowed therefor, there should be competent objective medical findings and the unsupported subjective statements of the injured party are not sufficient. *Diemel v. Weirich* (1953), 264 Wis. 265, 58 N. W. (2d) 651.

In the instant case the trial judge determined that the verdict was not perverse, nor the result of bias and prejudice, and further that there was no prejudicial error committed during the trial. He did state that the verdict was too large to be supported by the evidence. *Makowski v. Ehlenbach, supra; Blong v. Ed. Schuster & Co.* (1956), 274 Wis. 237, 242, 79 N. W. (2d) 820; *Blaisdell v. Allstate Ins. Co.* (1957), 1 Wis. (2d) 19, 24, 82 N. W. (2d) 886. In the *Makowski Case, supra,* the court states, at page 42, as follows:

"A jury may mistakenly assume (without supporting evidence) that there have been, or will be certain effects from an injury or fix compensation for sufficiently proved effects of injury at a figure which is beyond the range of reasonably debatable amounts. In a case where it is clear to the court that the amount awarded must necessarily reflect an allowance for the effects of injury not sufficiently proved or reflect a rate of compensation which is beyond reason, the court will declare the damages excessive. Where the question is a close one, it should be resolved in favor of the verdict."

Applying these standards to the evidence under review, the trial court determined that the amount of $8,000 was excessive and that it "clearly reflects an allowance for effects of injury not sufficiently proved and so awards compensation which is beyond being reasonable."

An analysis of the evidence relating to plaintiff's injuries is necessary for us to determine whether or not the trial court here abused its discretion in reducing the award. When the plaintiff was thrown forward in her car her head struck the rearview mirror. She felt her neck snap to the front and back as her head moved. Her head was cut in the scalp in two places. She bled profusely and her attending physician, Dr. Anthony Verdone, testified that she received "a fairly good cerebral concussion." She was not sure whether she was knocked unconscious but, in any event, in a confused and dizzy state she left the automobile and was taken by a passing motorist to the St. Mary's Hospital. There she was given first aid. Part of her head was shaved and the two head cuts were sutured, one requiring six sutures and the other nine. Both cuts were above the hairline. After this emergency treatment she left the hospital and went home. She saw her family physician, Dr. Verdone, on February 27th. He took X rays of her neck and back and these showed a flattening of the cervical spine. He detected muscle spasm and noted that she had double vision. He testified that she had pain over the lacerations on her head; she complained of headaches and dizziness; she also complained of pain in her lower back and in her neck; he found that the head cuts were edematous.

Dr. Verdone had been the family doctor for fifteen years or more. He saw her weekly until about May 8, 1959. Then he did not see her again until April 22, 1961. He testified that the wounds healed normally and that he referred her for a neurological examination to Dr. Donald Ullrich on March 17th. He was concerned about her nervousness and her manifestations of anxiety and depression.

Dr. Verdone's testimony about the permanency was accurately summarized as follows by the trial judge:

"There are two scars on her scalp, which are permanent. She will have headaches for two–three years from this; for one–two years she will have neck trouble; and be nervous and have anxiety for five years."

Dr. Ullrich conducted a complete neurological examination and reported that "she approached normalcy, except for superficial tenderness in the two scalp cuts." She complained of headaches but not of neck pains. He reported that there were no symptoms to suggest any convulsive disorder, and no muscle spasm in her neck.

Dr. Silas Evans examined the plaintiff on behalf of the defendant insurance company. This was done on February 5, 1960. His neurological examination findings were normal. He did detect some tension in the neck muscles. Subjective complaints that she had at the time included tenderness in the muscles of the upper and lower back. Although there was slight tenderness over the two scars, the marks were almost indistinguishable because of the normal growth of hair around the cuts.

The plaintiff, prior to the accident, had worked as a clerk for $1.35 an hour. She went back to work about five weeks after the accident and at the time of trial she had been working as a stenographer at the Milwaukee vocational school for about two and one-half years with a salary at the time of trial of about $260 per month.

In determining that the amount awarded by the jury was excessive, the trial judge summarized his findings as follows:

"Applying such standards to the evidence of the injuries sustained by Mrs. Lucas, the amount of $8,000 is excessive, yet it, nor any other circumstance, does not indicate prejudice, perversity, or corruption. It is too large to be supported by the evidence. The amount awarded clearly reflects an allowance for effects of injury not sufficiently proved and so awards compensation which is beyond being reasonable.

"She has two small scars in her scalp, which are well covered when her hair is combed over it. She is young; has married since the collision; has better employment with better compensation, and likes her work better than that which she had at the time; and her condition has not interfered with such work; she had no appearance of being nervous or in a state of anxiety at the trial; whether or not she has headaches from these injuries was not apparent and, if so, those are subjective. She had some pain and suffering incidental to her injuries.

"The sum of $4,300 is determined to be the fair and reasonable amount to be allowed for her pain, suffering, permanent scars, both past and future."

We are convinced that the trial court carefully considered all of the evidence which the jury was entitled to consider. As was stated in the *Makowski Case, supra,* at page 43:

"The trial judge has an advantage over the appellate court in that he not only sees and hears the testimony, which we can only read from the transcript, but he also has the same opportunity to observe the injured person as does the jury. In this case, for instance, he has seen the scars, and has his own opinion as to how serious their effect can reasonably be expected to be in the future lives of the infant plaintiffs. Because of the advantage of personal observation enjoyed by the trial judge, the rule has been evolved that where a trial court determines that damages are excessive, and orders a new trial for that reason, his order will be reversed and directions given by this court to enter judgment on the verdict only if we find an abuse of discretion on the part of the trial court."

Our conclusion is that the trial court did not abuse his discretion in his determination on this verdict and that the reduced amount should be approved.

Plaintiff raises a question about whether her rights under both the United States and the Wisconsin constitution have been violated by the trial court's actions on the jury's verdict. It happens that, in form, the trial court did

order a change in the amount of the award made by the jury. In substance, however, the trial court gave plaintiff the choice between a new trial and accepting the court-determined figure. Plaintiff was free to have a second jury make an award if she so desired. No right of plaintiff to trial by jury was violated by the judge's determining that $4,300 was a fair award because plaintiff was free to reject it. Plaintiff was deprived of the award made by one jury, but that award was found by the court to be excessive. Plaintiff's right to have a second jury make a new award was protected. The power of a court to set aside a jury verdict for damages because of being excessive has been recognized since long before the adoption of the federal or state constitution, and does not violate plaintiff's right to a trial by jury. In *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 91, 102 N. W. (2d) 393, we held:

"The United States supreme court in a unanimous opinion by the first Mr. Justice HARLAN held in *Arkansas Valley Land & Cattle Co. v. Mann* (1889), 130 U. S. 69, 9 Sup. Ct. 458, 32 L. Ed. 854, that such practice of granting the plaintiff the option to remit the excess amount by which a verdict is determined by the court to be excessive does not violate the right to trial by jury guaranteed by the Seventh amendment of the United States constitution. A number of the state courts have directly passed upon the constitutional issue and have upheld the rule of basing the amount to be remitted upon the excess over and above a reasonable amount. Among the cases so holding are: *Sewell v. Sewell* (1926), 91 Fla. 982, 109 So. 98; *Burdict v. Missouri Pacific R. Co.* (1894), 123 Mo. 221, 27 S. W. 453; and *Alter v. Shearwood* (1926), 114 Ohio St. 560, 151 N. E. 667.

"As previously mentioned herein, it was acknowledged that courts had the power to set aside excessive verdicts and grant new trials long before either the federal or state constitutions were adopted. If a court has the power to hold a verdict for a certain amount excessive, it necessarily follows that it has the power to determine an amount which is not

excessive. As the Missouri court well stated in *Burdict v. Missouri Pacific R. Co., supra* (p. 242), 'If it possesses the power to say the one thing, it possesses the power to say the other.' Therefore, when a court determines that a certain amount is a reasonable amount to allow for plaintiff's unliquidated damages, it is the equivalent of holding that such amount is not excessive."

An interlocutory judgment was entered at the request of the plaintiff which provided for all of the special damages, totaling $1,251.96. The judgment also provided as follows:

"It is further adjudged and decreed that judgment in favor of plaintiff Joyce Farnady Lucas against defendants, State Farm Mutual Automobile Insurance Company, Gerald Dale Davis, and Marilyn J. Davis, concerning damages for personal injuries, pain and suffering be held open pending direction by the supreme court of Wisconsin."

In a later separate order the trial court refused to disturb this judgment. Still later the defendant deposited enough money to take care of all of the special damages, plus interest, and then asked for a satisfaction of the judgment. Plaintiff's motion, asking the trial court to direct the clerk of court not to satisfy the judgment, was denied by the trial court in an order dated March 26, 1962. The plaintiff expressly declined to accept the deposited money pending the appeal.

The record in this case discloses that there may be some uncertainty in the procedure to be followed where a trial judge has reduced a verdict under the rule of the *Powers Case, supra.* We, therefore, take this opportunity to detail the several steps to be followed:

1. On motions after verdict the trial court should enter his decision which includes a determination that the jury award is excessive but not due to perversity or prejudice, and is not the result of error occurring during the course of the trial. The decision should also include a determina-

tion by the trial court of what amount he considers reasonable. The decision should direct a new trial on the issue of damages unless the plaintiff elects to take judgment for the lesser amount.

2. A formal order should then be entered by the trial court setting aside the verdict (rather than changing the jury's award in the verdict) and granting a new trial on the issue of damages, but providing that the plaintiff, in lieu thereof may have a judgment entered for the reduced amount if he notifies the court within the time specified by the court of his election to take the reduced amount and remits the difference between the reduced amount and the jury award. Such an order may provide for an extension of the option by a specified time after remittitur in the event an appeal is taken.

3. The plaintiff may then appeal from this order; if he so desires and if it is necessary the plaintiff should first ask the trial court to extend the time for exercising his option to cover the period of his appeal.

4. If no appeal is taken and the plaintiff does not elect to take judgment for the lesser amount, the case will proceed in the normal course of events to a new trial.

5. If an appeal is taken the supreme court will enter its decision thereon and remit the cause either affirming the new trial order with accompanying option or reversing or modifying it.

6. If no appeal is taken and the plaintiff does elect to take judgment for the reduced amount, judgment shall then be entered accordingly and the defendant may either appeal from that judgment or seek to satisfy it.

Applying these rules to the instant case the interlocutory judgment entered should be reversed and set aside and the cause remanded to the trial court for the entry of an order setting aside the verdict and granting plaintiff a new trial on damages unless plaintiff shall notify the said court

within twenty days of such order of her election to take the reduced amount of $4,300 as her award for the disputed damages and to remit the difference of $3,700. The order of March 5, 1962, denying plaintiff's motion to set aside the judgment should fall with the interlocutory judgment.

In the instant case there is the further order of March 26, 1962, denying plaintiff's motion for an order directing the clerk of court not to satisfy the interlocutory judgment of December 11, 1961. This order should be vacated and the satisfaction stricken for the reason that defendants deposited only a portion of the sum to which the plaintiff will be entitled should she elect to take the option provided and for the further reason that plaintiff did not have the use of such funds since she refused the withdrawal because of a belief that this withdrawal might adversely affect her rights on appeal. In any subsequent judgment for the plaintiff the amount now on deposit, if still on deposit, shall be credited to the defendants and the plaintiff shall be entitled to interest on the entire award and from the date of the verdict. Because the reversal here is needed only to conform with correct procedure and appellant does not prevail on any major point of substance, costs on this appeal should be awarded to the respondents and not to the appellant.

*By the Court.*—Judgment and orders reversed, and cause remanded for further proceedings not inconsistent with this opinion.