RICHIE, Appellant, v. BADGER STATE MUTUAL CASUALTY COMPANY and another, Respondents.

*November 27—December 20, 1963.*

134

136

For the appellant there was a brief and oral argument by *Charles Saggio* of Milwaukee.

For the respondents there was a brief by *deVries, Hollander & Vlasak* of Milwaukee, and oral argument by *Stephen C. deVries.*

CURRIE, J. Plaintiff's appeal from the three orders was not perfected until June 3, 1963. Inasmuch as the appeal from the orders of October 9, 1961, and March 21, 1962, was taken long after the time for appeal had expired, defendants would have been in a position to have moved for dismissal with respect to these two orders if they had done so before participating in the appeal in this court. However, by participating in the appeal in this court, defendants have waived their right to object to the timeliness of the appeal. Secs. 269.51 (1), Stats.; and *Estate of Bobo* (1957), 275 Wis. 452, 456, 82 N. W. (2d) 328; and *Monahan v. Department of Taxation,* post, p. 164, 125 N. W. (2d) 331.

Without making any attempt to appeal from the order of October 9, 1961, denying his motion for summary judgment, plaintiff voluntarily elected to proceed with trial before a jury. By a motion for directed verdict made during the course of trial plaintiff could have raised the same questions of law which were raised by the prior motion for summary judgment, thus rendering superfluous any reliance upon such prior motion. While this apparently presents a question of first impression in this court, we conclude that a party, who voluntarily participates in a trial of the action

after denial of his motion for summary judgment without having appealed from the order denying the motion and without requesting a stay until such appeal has been determined, waives his right to appeal from such order. Therefore, the appeal with respect to the order of October 9, 1961, will be dismissed.

Defendants contend that the order of March 21, 1962, is not an appealable order. We agree. Such order required plaintiff to submit to a continuance of a pretrial adverse examination, and further required plaintiff to answer responsively certain certified questions. The order was thus one affecting a provisional remedy which is granted by statute and not by the court, and is not appealable. *Hyslop v. Hyslop* (1940), 234 Wis. 430, 291 N. W. 337. Accordingly, the appeal with respect to this order will also be dismissed.

We now turn to the principal issue presented by this appeal, viz., did the trial court abuse its discretion in finding that the jury's award of $7,500 for pain and suffering to date of trial and of $5,000 for future pain, suffering, disability, and medical expenses was excessive. See *Lucas v. State Farm Mut. Automobile Ins. Co.* (1962), 17 Wis. (2d) 568, 571, 117 N. W. (2d) 660, certiorari denied, 373 U. S. 922, 83 Sup. Ct. 1522, 10 L. Ed. (2d) 423; *Makowski v. Ehlenbach* (1960), 11 Wis. (2d) 38, 44, 103 N. W. (2d) 907; and *Blong v. Ed. Schuster & Co.* (1956), 274 Wis. 237, 243, 79 N. W. (2d) 820. In order to properly resolve this issue it is necessary to review the pertinent evidence.

The accident occurred on Thursday, June 16, 1960, at about 4 o'clock in the afternoon, after plaintiff had completed his day's work as a janitor or sweeper at the plant of the Perlick Company, Inc. Plaintiff had been driving his car on a public street and was stopped when he was struck in the rear by the automobile operated by defendant Hermann. The force of the impact forced plaintiff's car ahead

so that its front struck another automobile directly ahead. Plaintiff was thrown forward so that the lower part of his chest struck the steering wheel and cracked it. The front seat of the car was torn loose from the car floor. His head was snapped forward and back and his cap was dislodged from his head. His right knee struck the dashboard violently. The nature of plaintiff's injuries as diagnosed by his physician, Dr. Verdone, on the Monday following the accident were: Severe contusion and sprain of right knee and hematoma of right thigh; abrasion of left leg; contusion of left arm and sprain and stiffness of the hand and fingers; discolored bruise mark on lower chest; acute sprain of back muscles; spasm in neck muscles due to temporary shortening of such muscles. Because plaintiff complained of headaches, Dr. Verdone also diagnosed a concussion syndrome although there is no evidence that plaintiff lost consciousness after the accident.

Plaintiff testified that following the accident he had pain in his neck and head; that it hurt him to breathe; and that his right knee was swollen. He drove his damaged car home. Because of the ill effects of the accident his supper consisted only of a cup of black coffee. Later in the evening, however, he drove his car over to an automobile-repair shop to have the damages to the car appraised for insurance purposes.

The following day, Friday, June 17th, he reported for work and put in his full eight hours although he claims he did not do much work. He also telephoned Dr. Verdone who had him report the next day at a hospital where a series of X rays were taken. These disclosed no bone injury. On Monday following, Dr. Verdone gave him a complete physical examination. The doctor applied no bandages or dressings to any of the abrasions or bruises, but told plaintiff to keep hot compresses on leg and arm and rest as much as possible.

Plaintiff worked the entire week following the accident. The week following that he did not work because he had a week's vacation coming from his employer. Instead of going up north and fishing as he had previously planned, plaintiff stayed at home and kept hot compresses on his injured knee. He lost no time from his employment from the day of the accident until December 3, 1960, when he sustained his heart attack.

Plaintiff testified as follows with respect to the duration of his injuries and the pain and disability that still existed at time of trial (almost two years after the accident) : The abrasion on his left shin healed in about a week. His left arm troubled him for about a month. The swelling of his right knee remained for about six months, but the knee still swells and bothers him on occasion. The headache he had immediately following the accident remained for about a month. He still has headaches but they are not as sharp as those following the accident. The stiffness in his neck remained for six or seven weeks. His back bothered him for a month "or so," and still bothers him if he goes up and down steps or walks too fast. The discoloration on his chest disappeared in about a month.

About seven weeks after the accident plaintiff had an inflammation of a vein in his upper right leg which Dr. Verdone diagnosed as a phlebitis, and which he testified was the result of the accident. According to Dr. Verdone this condition continued for about three months, while plaintiff testified it lasted for only six or seven weeks. The treatment Dr. Verdone prescribed for this was heat, elastic bandages, and a drug called Orenzyme. The doctor, however, permitted plaintiff to continue working while he was treating this blood-vessel inflammation.

Dr. Verdone also testified that at time of trial plaintiff was experiencing headaches once or twice a week; that he developed neck pain "on extreme range of motion;" and that

plaintiff had completely recovered from most of the trauma to the right knee, but will complain of occasional pain on weather changes or strenuous effort. Dr. Verdone further testified that the headaches and neck pain would disappear within five to ten years. He also stated that future medical treatment for plaintiff's head, neck, or knee would be "minimal." No estimate of actual cost thereof was given.

Plaintiff testified that after the accident he was unable to do all the work for his employer that he had done before the accident, and that he left undone tasks formerly performed. However, he also testified that as time went on he did more until by December 3, 1960, he was doing as much as two thirds to three fourths of his former work. His three immediate superiors, however, all testified that plaintiff after the accident regularly performed all the duties required by his job. Plaintiff also testified that while before the accident he did yard work, mowed his lawn, and did lifting about his home, he was unable to do this after the accident.

For some years prior to the accident plaintiff had been treated by Dr. Verdone for diabetes and hypertension and high blood pressure. The diabetes was kept under control by diet without the use of insulin and this continued to be true after the accident. Dr. Verdone testified that the accident aggravated the hypertension and caused plaintiff's coronary occlusion which occurred December 3, 1960, following exertion by plaintiff in assisting his son in lifting a washing machine. Dr. Verdone voiced the opinion that the heart attack was caused by the accident, and that ever since such heart attack plaintiff has been totally disabled from working. Drs. Rice and Evans, who testified as medical experts for defendants, expressed positive opinions that the heart attack was not caused by the accident, and advanced convincing reasons in support of these opinions.

The jury by its verdict clearly found that the heart attack was not caused by the accident. In addition to the fact that

the jury found no wage loss for the approximate eighteen months which elapsed between the heart attack and date of trial, as noted in the trial court's memorandum decision, the jury refused to award as damages the medical expenses incurred by reason of the heart attack. Dr. Verdone's total bill for medical services rendered plaintiff after the accident was $495 of which only $95 was for the period prior to the heart attack. Plaintiff's hospital bill for the period from December 3, 1960, to January 21, 1961, while he was hospitalized by reason of the heart attack, was $2,047.10. The jury awarded but $200 for plaintiff's medical expenses from date of accident to date of trial. Thus the jury, in assessing plaintiff's damages, obviously eliminated the consequences of plaintiff's heart attack.

In view of the foregoing we conclude that there was no abuse of discretion on the part of the trial court in finding that the award of $7,500 for past pain and suffering, and $5,000 for future pain, suffering, disability, and medical expenses was excessive. Under the rule of *Powers v. All-state Ins. Co.* (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393, where the damages awarded by the jury are excessive, the plaintiff should be granted the option of accepting judgment for such sum as the court shall determine is the reasonable amount of plaintiff's damages in lieu of a new trial on the issue of damages. The trial court followed this rule in giving plaintiff the option to accept damages in a reduced amount, or, in lieu thereof, a new trial on damages. We also find no abuse of discretion in the amounts determined by the trial court to be reasonable compensation for the damages suffered by plaintiff.

Plaintiff contends that the application of the rule of the *Powers Case* to a situation such as here presented, where the verdict has been arrived at without passion and prejudice or commission of prejudicial error, violates plaintiff's constitutional right to a jury trial. This constitutional issue

was directly passed on in both the *Powers Case* and *Lucas v. State Farm Mut. Automobile Ins. Co., supra.* Plaintiff has presented no further argument or authority that casts doubt on the validity of the holdings of those two cases on this constitutional issue. Plaintiff cites the Seventh amendment to the United States constitution. This amendment relates to federal, not state, action. *Minneapolis & St. Louis R. Co. v. Bombolis* (1916), 241 U. S. 211, 36 Sup. Ct. 595, 60 L. Ed. 961. As recently as 1953 the United States supreme court in *Stein v. New York,* 346 U. S. 156, 179, 73 Sup. Ct. 1077, 97 L. Ed. 1522, cited the *Bombolis Case* with approval, and stated, "The states are free to allocate functions as between judge and jury as they see fit." Moreover, Mr. Justice CARDOZO in *Palko v. Connecticut* (1937), 302 U. S. 319, 324, 58 Sup. Ct. 149, 82 L. Ed. 288, stated:

"The Sixth Amendment calls for a jury trial in criminal cases and the Seventh for a jury trial in civil cases at common law where the value in controversy shall exceed twenty dollars. This court has ruled that consistently with those amendments trial by jury may be modified *by a state* or abolished altogether." (Emphasis supplied.)

The opinion in the *Palko Case* also held that trial by jury is not of the "very essence of a scheme of ordered liberty" so as to be incorporated into the Fourteenth amendment by the due-process clause as are the freedoms guaranteed by the First amendment.

*By the Court.*—The appeal from the orders of October 9, 1961, and March 21, 1962, is dismissed; the order of April 23, 1963, is modified so as to extend the period in which plaintiff may exercise the option to elect to take judgment so that such period will expire thirty days after receipt of the record from this court by the circuit court and, as so modified, the order is affirmed.