OLSON, Plaintiff, v. SIORDIA and another, Defendants: AMERICAN AUTOMOBILE INSURANCE COMPANY, Impleaded Defendant. [Case No. 32.]

ARIAS and others, Plaintiffs, v. AMERICAN INSURANCE COMPANY OF NEWARK and others, Defendants. [Case No. 33.]

*September 29—October 27, 1964.*

For the plaintiff there was a brief by *Kluwin, Dunphy, Hankin & Hayes* of Milwaukee, and oral argument by *Bernard J. Hankin.*

For the defendants there were briefs by *Kivett & Kasdorf,* attorneys, and *H. A. Dall* of counsel, all of Milwaukee, and oral argument by *Mr. Dall.*

For the plaintiffs there were briefs by *Podell & Ugent* of Milwaukee, and oral argument by *Alvin R. Ugent.*

For the defendants Olson and the American Insurance Company of Newark, there was a brief by *Kluwin, Dunphy, Hankin & Hayes* of Milwaukee, and oral argument by *Bernard J. Hankin.*

For the defendants Siordia and the Dairyland Mutual Insurance Company there were briefs by *Kivett & Kasdorf,* attorneys, and *H. A. Dall* of counsel, all of Milwaukee, and oral argument by *Mr. Dall.*

BEILFUSS, J. These appeals present issues on whether there is credible evidence to support the jury's finding that Olson was causally negligent; whether the trial court committed error in that it failed to clarify the jury's apparent confusion as to the distinction between negligence and cause; and whether the damages awarded to Luisa Rodriguez and Frances Arias by the jury were excessive.

*Credible Evidence to Support the Finding*
*of Negligence.*

Defendant Olson and his insurers concede that if the jury could have believed the testimony of Mr. Siordia it could have found Olson causally negligent. They contend that Siordia's testimony is inherently incredible. They point to many contradictions in Siordia's testimony and that of his supporting witnesses. Some of these inconsistencies can be explained by Siordia's limited ability to speak or understand the English language.

The testimony and explanation of the collision by Siordia and Olson are grossly divergent. Olson contends that he was and had been traveling in the same lane as Siordia and that Siordia hit his vehicle from the rear. Siordia claimed that Olson sharply cut into the lane without warning and that the collision occurred while Olson was attempting to cut in ahead of him.

Certain physical facts are relied on by Siordia to support the jury's finding. The photographs reprinted in Siordia's brief and supplemental appendix and Olson's supplemental appendix indicate that the greatest amount of damage was done to the right rear fender of the Olson car and the left front fender of the Siordia car. Olson was driving a station wagon. The side panel window at the right rear of the station wagon was broken; the rear window above the tailgate was not broken. Lumber, which Olson had stacked lengthwise in his station wagon, was thrown out on the road. There was testimony indicating that the Siordia car came to a stop facing south with its right wheels about five inches off the pavement.

Although the facts recited above will support conflicting inferences, they are sufficiently corroborative of Siordia's version of the accident to allow the jury to accept that version.

The trial court approved the jury's findings. There is no sufficient showing that the findings were based upon incredible evidence or unreasonable inferences. The findings as to liability are affirmed.

### The Jury's Confusion as to the Distinction Between Negligence and Cause.

After the jury had retired it came back out to ask the trial court for a clarification of the word "cause" as used in the special verdict, with particular reference to whether negligence presumed cause. The trial court repeated its instruction on cause, which was identical with Wis J I—Civil, Part II, 1500, and its instruction on comparison, which was identical with Wis J I—Civil, Part II, 1575. The jury foreman stated that he believed the questions were answered. The necessity and extent of reinstruction or clarifying instruction to the jury must rest in the sound discretion of the trial judge. We find no error nor abuse of judicial discretion.

We deem other assignments of error as to instructions to be without merit.

### The Excessive Damages.

(a) *Luisa Rodriguez.* The trial judge in his memorandum opinion on motions after verdict stated that the only injury of consequence sustained by Luisa Rodriguez was a fracture of the left forearm. He pointed out that the fracture healed well and that Mrs. Rodriguez's main complaint regarded the development of tendinitis. He felt that Dr. Mitz's testimony on the tendinitis question was not positive as to whether it resulted from the trauma of the accident or from carrying a cast on her arm. He also pointed out that Mrs. Rodriguez had been discharged from treatment by Dr. Mitz on June 5. 1961, and was not seen again by the doctor until July 26,

1963, and then for the purpose of evaluation rather than treatment. He concluded that the jury verdict was excessive.

Mrs. Rodriguez was sixty years old at the time of the accident and sixty-three at the time of the trial. She testified, through an interpreter, that she experienced a great deal of pain all during the course of her treatment; that the pain subsided about the date she was discharged from treatment; and that the pain returned about two weeks thereafter. She testified that motion was considerably restricted in her left arm.

Dr. Mitz testified that during the course of treatment she developed tendinitis. He attempted to alleviate this condition with intramuscular injections of cortisone and physical therapy. He testified that the pain she felt during the course of treatment was due to a traumatic type of tendinitis of the left shoulder. In describing tendinitis Dr. Mitz explained that it was an inflammation of a tendon and that the degree of pain associated with it ranges from mild to severe depending upon the individual case. As to the pain suffered by Mrs. Rodriguez he testified, "It was severe, very severe."

Regarding whether the tendinitis related to her original injury he stated:

"I believe it was either directly from the injury itself or indirectly associated with the cast itself."

He was unable to state positively that the tendinitis was associated with the cast. Based on his June 26, 1963, evaluation he felt that Mrs. Rodriguez had pain and a permanent limitation of motion as a result of the injuries she sustained. Her permanent disability was a weakness and loss of muscle power in her left forearm.

In his memorandum opinion on motions after verdict, the trial judge stated, "The doctor's testimony as to the tendonitis [sic] was not positive as to whether it resulted from the trauma of the accident or whether it was from carrying the

cast on the arm." There is no claim of negligent treatment by the physician. Counsel for the defendants conceded in oral argument that whether the tendinitis resulted from the accident or from the cast was immaterial.[1]

(b) *Frances Arias.* Mrs. Arias was eighty-six years old at the time of the accident and eighty-nine years old at the time of trial. Dr. Mitz examined her prior to trial and concluded that her general physical condition was so poor that she could not appear at the trial. Counsel for Mrs. Arias stipulated prior to trial that her inability to appear was not solely due to the injuries she had received in the accident.

Mrs. Arias was taken home from the scene of the accident. Relatives, including Mrs. Rodriguez, sat up with her all night that night. She was in great pain. The next morning she was taken to a Milwaukee hospital. There it was determined that her right femur was fractured at the neck. Because of her age and the nature of the fracture it was necessary for the attending physicians to remove by surgery the head and neck of the femur and insert a stainless steel prosthesis. Doing this caused a spiral fracture to the shaft of the femur, which had to be held in place by metal plates and screws. The operation itself, because of Mrs. Arias' age and general physical condition, constituted a critical hazard, but the record does not reveal that she was aware of this hazard. Thus, anxiety compensable as a part of her pain and suffering was not established.

Mrs. Arias' postoperative course was very good. She left the hospital seventeen days later. Dr. Mitz testified that he examined her on three occasions after she left the hospital.

[1] ". . . in the case of any other intervening act made necessary or proper because of the act of the primary wrongdoer or set in motion by him so that it can be attributed as a natural consequence of the original act, the original wrongdoer is liable for the additional or increased damages resulting therefrom." 15 Am. Jur., Damages, p. 493, sec. 83; see also *Heims v. Hanke* (1958), 5 Wis. (2d) 465, 93 N. W. (2d) 455.

On the first of these occasions he found that she was having a great deal of trouble walking. With the aid of a chair, which she pushed in front of her, she was able to take six to eight steps. This situation had not changed up to the time of trial. She complained of pain in the right hip area as far down as the lower leg, especially with motion. In the doctor's opinion Mrs. Arias' disability was permanent. In regard to whether the accident of October 2, 1960, caused this injury he testified as follows:

"*Q.* Now, based on this history and based on the injury that you described when you first examined her, do you have an opinion to a reasonable medical certainty as to whether her original fracture of the neck of the femur was caused—do you have an opinion as to the cause of this fracture to the neck of the femur? *A.* Yes.

"*Q.* What is that opinion? *A.* My opinion is that the fracture could very well have been caused as a result of the automobile accident."

· In the portion of his opinion relating to Mrs. Arias the trial judge indicated some doubt as to whether a causal connection was established between the fracture and the accident and stated that there was no testimony in the record that the inability of Frances Arias to walk or appear in court was in any way a result of or connected with the injuries she sustained in the collision. We conclude that Dr. Mitz's testimony regarding the causal connection between the fracture and the accident is stated in terms of a reasonable medical certainty, notwithstanding the fact that he used the words "could very well have."

The question of causal relation between the accident and the injury was for the jury. Dr. Mitz's opinion, the description of the accident, including the position in which Mrs. Arias was found just after the collision, and the testimony concerning her physical condition and ability to walk before the accident contrasted with that concerning her physical con-

dition and inability to walk soon afterwards constitute sufficient credible evidence to support an inference of a causal connection between the accident and her injury.

The trial judge concluded that the jury damage awards to Luisa Rodriguez and Frances Arias in the amounts of $6,500 and $25,000, respectively, were excessive but not due to perversity or prejudice and were not the result of prejudicial error in the trial. He found reasonable damages to be $2,500 for Mrs. Rodriguez, and $8,500 for Mrs. Arias.

The standard to be applied in reviewing a jury verdict on damages is set forth in *Makowski v. Ehlenbach* (1960), 11 Wis. (2d) 38, 41–43, 103 N. W. (2d) 907:

"*2. The standard to be applied in reviewing a jury verdict on damages.* The problem of achieving fairness in assessing damages for personal injury is fraught with difficulty. Theoretical nicety is impossible. Under our judicial system, we rely primarily upon the good sense of jurors to determine the amount of money which will compensate an individual for whatever loss of well-being he has suffered as a result of injury. The general rule governing the trial judge or appellate court in determining whether damages are excessive on the basis of the amount found is stated in 15 Am. Jur., Damages, pp. 621, 622, sec. 205, quoted with approval in *Bethke v. Duwe* (1950), 256 Wis. 378, 384, 41 N. W. (2d) 277, as follows:

" 'In actions sounding in damages merely, where the law furnishes no legal rule for measuring them, the amount to be awarded rests largely in the discretion of the jury, and with their verdict the courts are reluctant to interfere. As shown elsewhere, a verdict may be set aside as excessive by the trial court or on appeal when, and not unless, it is so clearly excessive as to indicate that it was the result of passion, prejudice, or corruption, or it is clear that the jury disregarded the evidence or the rules of law. . . .

" 'Since it is for the jury, and not for the court, to fix the amount of the damages, their verdict in an action for unliquidated damages will not be set aside merely because it is large or because the reviewing court would have awarded less. Full compensation is impossible in the abstract, and differ-

ent individuals will vary in their estimate of the sum which will be a just pecuniary compensation. Hence, all that the court can do is to see that the jury approximates a sane estimate, or, as it is sometimes said, see that the results attained do not shock the judicial conscience.'

"We should add to the statement just quoted that there are cases where the amount of an award may not indicate prejudice, perversity, or corruption, yet is too large to be supported by the evidence. *Blong v. Ed. Schuster & Co.* (1956), 274 Wis. 237, 242, 79 N. W. (2d) 820; *Blaisdell v. Allstate Ins. Co.* (1957), 1 Wis. (2d) 19, 24, 82 N. W. (2d) 886. A jury may mistakenly assume (without supporting evidence) that there have been, or will be certain effects from an injury or fix compensation for sufficiently proved effects of injury at a figure which is beyond the range of reasonably debatable amounts. In a case where it is clear to the court that the amount awarded must necessarily reflect an allowance for the effects of injury not sufficiently proved or reflect a rate of compensation which is beyond reason, the court will declare the damages excessive. Where the question is a close one, it should be resolved in favor of the verdict."

In reviewing the actions of the trial court as to damage verdicts, the rules are set forth in *Boodry v. Byrne* (1964), 22 Wis. (2d) 585, 588, 589, 126 N. W. (2d) 503, as follows:

"Where a trial court has reviewed the evidence and has found a jury verdict awarding damages to be excessive and has fixed a reduced amount therefor, and has determined that there should be a new trial on damages unless the plaintiff exercises an option to take judgment on the reduced amount, this court will reverse only if we find an abuse of discretion on the part of the trial court. *Lucas v. State Farm Mut. Automobile Ins. Co.* (1962), 17 Wis. (2d) 568, 571, 117 N. W. (2d) 660, and cases cited therein.

"In reviewing the evidence to determine whether the damages are excessive both the trial court and this court must view the evidence in the light most favorable to plaintiff. *Kincannon v. National Indemnity Co.* (1958), 5 Wis. (2d) 231, 233, 92 N. W. (2d) 884. The trial court, however, is

not required to search out one or several isolated pieces of testimony, which standing alone might sustain the damages found by the jury, but rather must review all the evidence bearing on damages and then, viewed reasonably as a whole, consider the same in the light most favorable to the plaintiff. On appeal from a determination by the trial court that the found damages were excessive, this court will not find an abuse of discretion if there exists a reasonable basis for the trial court's determination after resolving any direct conflicts in the testimony in favor of plaintiff."

Under the rules and standards as set forth above, we conclude that the evidence does sustain the jury's award of damages for Luisa Rodriguez in the amount of $6,500, and that it was an abuse of discretion to determine the award was excessive. We will not again review the evidence except to point out that Mrs. Rodriguez was sixty years old at the time of the accident with a life expectancy of several years. She was active and in good health before the accident. She now has a permanent injury to her left arm and shoulder which is both painful and restrictive as to use and motion. To be sure the award is generous. Even though this court, if it were to find damages, might well have awarded a lesser sum, we cannot conclude $6,500 is beyond reasonable limits.

The situation as to Mrs. Arias as revealed by the record is somewhat different. She was eighty-six years old at the time of the accident and eighty-nine at the time of trial. Her life expectancy is relatively short. Mrs. Arias had the burden to prove her damages. For physical reasons unknown to us or the jury she was not able to be present at the trial. Her injury was severe and she has a confining permanent injury although her recovery was excellent for a woman of her age and general physical condition. The evidence of her pain and suffering and general discomfort is meager without resort to speculation or conjecture. There is no proof of wage loss or earning capacity. While we sympathize with Mrs. Arias, sympathy cannot be a substitute for proof of

damage. The jury award of $25,000 for her personal injuries cannot be sustained under the evidence as being within reasonable limits. We agree with the trial court that the award was excessive.

Under the *Powers* rule [2] the trial court found the reasonable amount of her damage to be $8,500. Contrasted to the $6,500 award to Mrs. Rodriguez, this award may appear low. It is not our purpose to determine whether damage awards are high or low, nor to substitute our judgment for that of the jury or the trial court but rather to determine whether the award is within reasonable limits. The majority of the court concludes that $8,500 is within the range of reasonableness and that the trial court did not abuse its discretion in fixing the award for her option in that amount.

*By the Court.*—The interlocutory judgment insofar as it sustains the jury's finding and apportionment of causal negligence is affirmed; the interlocutory judgment insofar as it sets aside the jury's verdict as to the sum which will reasonably compensate Frances Arias for her personal injuries and orders a new trial on the issue of damages with the option in Frances Arias to take judgment for $8,500, plus special damages and the costs and disbursements of the action, is modified to provide that such option be exercised within twenty days of the return of the record to the trial court, and affirmed as modified. The interlocutory judgment insofar as it sets aside the jury verdict as to the sum which will reasonably compensate Luisa Rodriguez for her personal injuries is reversed with directions to reinstate the verdict and render judgment thereon.

WILKIE, J. (*dissenting in part*). I agree with the majority in its reversal of the trial court with respect to the judgment in favor of Luisa Rodriguez. I, too, would reinstate the jury verdict.

---

[2] *Powers v. Allstate Ins. Co., supra.*

I disagree, however, with the majority in its affirmance of the trial court with respect to the judgment in favor of Frances Arias. As in the case of *Boodry v. Byrne* [1] I agree with the majority that the jury verdict setting Mrs. Arias' general damages at $25,000 was excessive. However, as in *Boodry,* I dissent here for the reason that in fixing the option at $8,500, or a reduction of $16,500, I believe the trial court has arrived at a figure that is below the range of reasonably debatable amounts for a jury award under the facts of the case, viewed in the light most favorable to the plaintiff. Here I would follow the procedure set forth in my dissent in *Boodry, supra,* and raise the amount of the option, *first* holding that the trial court abused its discretion in setting the amount of the option, and *second,* determining a reasonable sum (in lieu of the sum fixed by the trial court) as the total amount of the general damage award.

I realize that since *Powers* [2] there has been no case wherein (1) our court has affirmed a trial court's finding that a jury award is excessive, and (2) our court has found a sum deemed reasonable by the trial court to be inadequate and below the range of reasonably debatable amounts for a jury award. I would say that this presents just such a case. So, too, did *Boodry.* In effect, I would rewrite the option, raising the figure to a sum that is within the range of reasonably debatable amounts. To do this requires no modification of the *Powers* rule, but merely a new and logical refinement for the application of that rule.

The chief criticism of adopting this procedure is the fear that it might invite supreme court review of more jury verdicts. I cannot see how this would be the case. The only instances where the option would be adjusted would be where

[1] (1964), 22 Wis. (2d) 585, 126 N. W. (2d) 503.
[2] *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393.

*first,* the trial court correctly decides that the verdict is excessive, and *second,* the trial court sets an option amount that is below the range of reasonably debatable amounts. This court, in making its review to ascertain whether an amount set by the trial court falls within the range, at the same time is determining whether, on the contrary, the amount set is below the range. Where the court reaches the latter conclusion, the court should adjust the option and set a reasonable figure. The basic purpose of the *Powers* rule, *i.e.,* the elimination of unnecessary retrials, would be furthered by following this procedure.

I am authorized to state that Mr. Justice HALLOWS joins in this dissent.