CITY OF MILWAUKEE, Respondent, v. CHRISTOPHER, Appellant.

*No. 27. Argued November 24, 1969.—Decided December 19, 1969.*
(Also reported in 172 N. W. 2d 695.)

For the appellant there was a brief by *James D'Amato* of Waukesha, and oral argument by *Richard J. Steinberg* of Milwaukee.

For the respondent there was a brief by *John J. Fleming*, city attorney, and *Theophilus C. Crockett*, assistant city attorney, and oral argument by *Mr. Crockett*.

WILKIE, J. Before considering this appeal on its merits it is necessary to dispose of an issue raised for the first time by the city at oral argument, namely: Was the appeal to this court timely?

This issue of the timeliness of the appeal cannot be raised by the city because the city, by participating in this appeal without raising an objection to its timeliness until oral argument stage, has waived such objection.[1]

Thus, we reach the issues raised on this appeal going to the merits of appellant's judgment of guilt.

[1] *See* sec. 269.51 (1), Stats.; *Richie v. Badger State Mut. Casualty Co.* (1963), 22 Wis. 2d 133, 125 N. W. 2d 381; *Estate of Bobo* (1957), 275 Wis. 452, 82 N. W. 2d 328; *Barnard v. Coates* (1965), 28 Wis. 2d 1, 135 N. W. 2d 809; *Guardianship of Barnes* (1957), 275 Wis. 356, 82 N. W. 2d 211. *See also* sec. 274.11 (4), Stats. *Cf. Monahan v. Department of Taxation* (1963), 22 Wis. 2d 164, 170, 125 N. W. 2d 331.

Two issues are raised:

1. Was there sufficient evidence to establish appellant's guilt of drunkenness by clear, satisfactory and convincing evidence?

2. If not, was appellant still guilty of violating Milwaukee Ordinance 106–2 because of the abusive, vulgar and obscene language used?

In *Madison v. Geier*,[2] this court said:

"By sec. 299.30 (5), Stats., the circuit court on an appeal in a municipal forfeiture action is granted the same power as this court under ch. 274 to review, affirm, reverse, or modify the appealed judgment. In such an appeal the circuit court makes no finding of fact; hence, on this appeal this court begins where the appeal to the circuit court began, *i.e.*, the finding of the trial court. In ordinance-violation cases, sometimes called forfeiture actions, as in other civil cases, unless the findings of the trial court are against the great weight and clear preponderance of the evidence they will not be set aside on appeal even though contrary findings might have been made with evidence in their support. . . . But, to apply the great-weight-and-clear-preponderance test a court's finding must at least be supported by evidence sufficient to meet the burden of proof for that type of case."[3] (Citations omitted.)

In *Geier*, this court went on to establish that the standard of proof which was applicable to ordinance-violation cases was best expressed in terms of "clear, satisfactory, and convincing evidence."

The trial court in the instant case expressly recognized that this was the standard to be applied here and held that the city met this burden. Thus, our first inquiry must be into the question of whether the city did indeed meet the burden of clear, satisfactory and convincing evidence. If it did, then the further question becomes: Were the trial court's findings against the great weight

---

[2] (1965), 27 Wis. 2d 687, 135 N. W. 2d 761.

[3] *Id.* at page 690. *See also Madison v. Walker* (1965), 28 Wis. 2d 469, 137 N. W. 2d 410.

and clear preponderance of the evidence? For the reasons set forth below, we conclude that, as to the charge of drunkenness, the city did not meet this burden and thus the trial court's finding as to drunkenness was against the great weight and clear preponderance of the evidence.

At the time of his arrest, Christopher was residing with his parents in Milwaukee. During the evening of January 17, 1968, while at home with his father, Christopher drank two glasses of beer.

Later that evening, at about 9 p. m., Christopher left his home to go to a tavern located near the intersection of 16th and National on Milwaukee's south side. This tavern is a place where young people under the age of twenty-one are permitted to dance, but no one is permitted to drink alcoholic beverages without proper proof that he is over twenty-one. He arrived at the tavern at about 9:30 p. m. and spent the rest of the evening dancing and socializing. Christopher testified that he had nothing to drink while at the tavern other than one Coke. There was no testimony introduced to indicate that anyone saw Christopher drinking anything during this period.

The city's entire case is based on the testimony of two Milwaukee police officers.

Officer James Olson testified that at about 12:30 a. m. on the morning of January 18, 1968, he observed Christopher in the doorway to the tavern. Olson testified that he asked the defendant to leave and Christopher responded by saying that he was looking for a friend, and then left. Olson further testified that in this brief encounter there was nothing to indicate that Christopher was drunk at this time.

Forty-five minutes later, or about 1:15 a. m., while Olson was assisting in the arrest of some juveniles near the entrance to the tavern, he observed Christopher crossing National avenue heading for the tavern. According to Olson, Christopher was staggering, "swaying,

clumsy, his legs looked like they were weak, he wasn't steady on them."

Christopher then attempted to reenter the tavern. Olson told him to leave and according to Olson, defendant said: "I don't have to, I'm not going to, I'm going to stay right here." Olson again told defendant to leave and this time, according to Olson, defendant swore and mouthed obscenities at him. Then Olson arrested defendant for drunk and disorderly conduct.

Olson testified that prior to arresting Christopher he observed that defendant staggered and swayed; was unsure of his footing; his eyes were bloodshot; there was a strong odor of alcoholic beverage on his breath; that he slurred as he spoke; and that, in his opinion, Christopher was drunk at the time of arrest.

The other policeman, Officer Wojtycski, testified that he first observed defendant as Officer Olson was talking to him at the entranceway to the bar. Officer Wojtycski testified he was about two feet away from defendant at the time of his arrest and he observed that defendant was swaying and that his eyes were bloodshot. He was also of the opinion that defendant was drunk at the time of his arrest.

Officer Wojtycski did not testify to hearing Christopher swear or use obscene language.

After his arrest, Christopher was taken to the police station but was not given any of the usual drunk-determination tests except he was required to write the alphabet.

In defense, Christopher presented the testimony of Dr. James Hurley, a specialist with twenty-eight years' experience in the field of neuropsychiatry. Dr. Hurley testified that he had examined the defendant on September 6, 1967, for an evaluation of neurological and emotional residuals defendant suffered as a consequence of an accident he was involved in on November 2, 1965. Dr. Hurley testified that defendant had sustained a severe head injury in the accident as a result of which he was

hospitalized and comatose for about three weeks; that the defendant thereafter developed a psychotic reaction which necessitated his hospitalization for three or four weeks. Dr. Hurley was of the opinion:

". . . that there was very definite marked evidence of brain damage as a consequence of this injury. There was intellectual impairment of ten or more points in the IQ level. From a neurological standpoint there was evidence of ataxia, disturbance in equilibrium and great—slurred speech, difficulty in association of words, and from an emotional standpoint he was labile, somewhat unappropriate at times . . . ."

By labile the doctor said that he meant that "the emotions may tend at times to be a little bit flighty, a little bit exaggerated for the incident or the topic that is described."

Dr. Hurley also testified that defendant's condition of staggering and swaying would vary from time to time depending on stress and that the effect of alcohol on a man in defendant's condition would be accentuated.

The defense also produced an employee of the tavern who testified that he had not seen the defendant drink anything alcoholic on the night in question and that in his opinion the defendant was sober.

Christopher's father also testified that when he saw his son in the police station at about 2 a. m., he was not drunk and that his appearance and demeanor could not be mistaken for intoxication.

The defendant testified on his own behalf and, in addition to denying he was drunk, he denied having anything alcoholic to drink on the night in question other than the two glasses of beer he had at home more than four hours before his arrest. Defendant also denied swearing at the arresting officer.

On the basis of the above testimony, Judge BLANCHARD found, *inter alia,*

"It's one of those difficult things but from the evidence the court will find the defendant is guilty. I think that

the two officers were here, they have absolutely no reason to distort anything. They don't know this man and the thing that impresses me the worst is the language he used. I didn't. want to repeat those words but I have them written down here, but swear words to an officer for no reason at all, and I think he comes from a good family, he looks like a high class boy, his father and mother are sitting there and I don't think anybody in his *sober* mind would have said the words he said, . . . . Now I come from a home, we have boys in our home, they don't use that language. I don't know, and I have been sitting in juvenile court twenty years up north, I don't think any of our juveniles use those words unless they are *intoxicated*. So the words here, his eyes were bloodshot, his speech was slurred,—his speech wasn't slurred here, slurred on the stand, he didn't sway back and forth—the whole thing to me, so it's the decision of the court that the defendant is guilty as charged." (Emphasis added.)

Although this court has recognized that a man who normally walks in an unsteady manner and slurs his speech can get drunk; [4] and although the credibility of the witnesses is for the trial court to pass upon, and the officers were competent to express their opinion that they thought the defendant was drunk at the time of the arrest; [5] and although the failure of the police to give any of the usual "drunk" tests is not probative of the defendant's sobriety since such tests are not necessary to establish intoxication; [6] nevertheless on the record in this case the city did not meet its burden of proof by clear, convincing and satisfactory evidence.

Two points are especially significant in this record: (1) There is no direct evidence that defendant was drink-

[4] *Milwaukee v. Kelly* (1968), 40 Wis. 2d 136, 161 N. W. 2d 271.

[5] *Milwaukee v. Thompson* (1964), 24 Wis. 2d 621, 130 N. W. 2d 241; *Milwaukee v. Johnston* (1963), 21 Wis. 2d 411, 124 N. W. 2d 690; *Odya v. Quade* (1958), 4 Wis. 2d 63, 90 N. W. 2d 96.

[6] *Milwaukee v. Johnston, supra,* footnote 5; *Milwaukee v. Richards* (1955), 269 Wis. 570, 69 N. W. 2d 445. Officer Olson testified that the various drunk tests were customarily given only to those arrested for drunken driving.

ing anything alcoholic prior to his arrest (except for the two beers much earlier in the evening, which could not have an intoxicating effect four hours later); and (2) Dr. Hurley's testimony tying up the aftereffects of Christopher's previous head injury to his conduct at the time of his arrest. He was asked this quesion:

"And can you state to a reasonable degree of medical certainty whether on the night in question he could have appeared to have been drunk without actually having consumed any alcohol?"

He answered: "He could."

The only evidence that was inconsistent with Dr. Hurley's testimony that defendant's manifestations of drunkenness could be attributed to his neurological condition was the arresting officer's (Olson's) testimony that he could smell alcohol on defendant's breath, and the testimony of both officers (Olson and Wojtycski) that defendant's eyes were bloodshot at the time of his arrest. This inconsistent testimony is not sufficient so the city could meet the burden of proof by clear, satisfactory and convincing evidence. This would appear to require a reversal.

However, sec. 106–2 of the Milwaukee Code of Ordinances is phrased in the alternative: To be found guilty of a violation of this ordinance it must be proved by clear, satisfactory and convincing evidence that the defendant was either found intoxicated in the city of Milwaukee *or* that he used abusive, vulgar and obscene language. A finding based on the proper quantum of proof of either of these is sufficient for a conviction. Although the evidence is insufficient to meet the burden of proving drunkenness, the evidence abundantly supports the determination that Christopher was guilty of disorderly conduct by reason of the abusive, vulgar and obscene language he used.

*By the Court.*—Judgment modified to find defendant guilty of disorderly conduct, not of drunkenness, and, as modified, affirmed. No costs to be taxed on this appeal.