Meibus vs. Dodge.

MEIBUS VS. DODGE.

CAUSE OF ACTION: DAMAGES: EVIDENCE. (1) *Liability of owner for act of ferocious dog.* (2) *Exemplary damages.* (3) *Evidence of defendant's pecuniary circumstances.*

1. Defendant, knowing the ferocious disposition of his dog, and that it had been accustomed to bite persons, and in particular that, when left guarding his team in a village street, it had attacked persons passing along the highway, afterwards left it, unsecured and unmuzzled, in or near his sleigh, near a village sidewalk; and a child of seven years, passing on the sidewalk, came to the sleigh, and meddled with a whip

Meibus vs. Dodge.

lying therein, and was thereupon thrown down and bitten by the dog. *Held*, that plaintiff was liable for the injury, and the child's act in meddling with the whip was no defense.

2. If defendant had been guilty of gross and criminal negligence in allowing the dog to run at large unmuzzled — such negligence as evinced a wanton disregard of the safety of others, — the jury might give *exemplary* damages.

3. Where the case is one for exemplary damages, in any view of the evidence, proof of defendant's pecuniary circumstances is admissible.

APPEAL from the Circuit Court for *Jefferson* County.

The plaintiff, a boy about seven years old, was attacked and bitten in the leg by defendant's dog on the 7th of February, 1874, at the village of Waterloo in Jefferson county; and afterwards, during the same year, he brought this action, by his guardian *ad litem*, for the injuries thus sustained. The complaint avers that defendant, at the time mentioned, well knowing that the dog was of a ferocious and mischievous disposition, and accustomed to bite mankind, negligently suffered him to go at large without being properly guarded or confined. The answer put in issue all the principal averments of the complaint relating to the cause of action, and averred that at the time laid in the complaint, the plaintiff was trespassing upon defendant's sleigh, which the dog was guarding; and wrongfully took hold of a whip therein, the property of the defendant, and attempted to pull the same therefrom, which attempt the dog properly prevented, etc.

The testimony for the plaintiff tended to show, that at the time of the injury, defendant's team, attached to his sleigh, was hitched near the sidewalk on Columbus street, one of the main business streets in the village of Waterloo; that another team was hitched near the same sidewalk, about six feet behind defendant's sleigh, and so as to obstruct a crosswalk, so that persons crossing Columbus street by that crosswalk would naturally pass between the two sleighs; that defendant's dog, described as "about two and a half feet high, and weighing about eighty or ninety pounds," was sitting near defendant's

sleigh, defendant himself not being present; and that plaintiff passed between the two sleighs to the sidewalk, when the dog sprang at him, threw him down and bit him, etc.

The plaintiff, against objection, also introduced evidence of attacks previously made by the same dog upon other persons. This evidence tended to show, that on some day near the close of January, 1874, one Munson and one Ohleson were walking along the sidewalk of a public street in the village of Columbus in this state; that defendant's team and sleigh were near the sidewalk, defendant himself not being with them; that when the two persons above named came within a few rods of the sleigh, the dog got out of it and ran towards them, sprang upon Munson and bit his leg, and then ran back into the sleigh; that Munson and Ohleson then went into the store of one Anderson, near the place where this occurred, and examined the wound; that a few minutes afterwards Anderson started to go across the street to notify the village marshal to take care of the dog; that from fear of being attacked by the dog, he took an ax-handle with him, and went "as much as twenty feet away from the sleigh," but the dog jumped out of the sleigh and attacked him; that Anderson struck at the dog with the ax-handle, "as hard and as fast as he could," some ten or fifteen times, and struck him once, when the dog went back into the sleigh; that Anderson then notified the marshal, who went across the street at his request; that when the marshal came within twenty feet of defendant's sleigh, the dog, which was sitting by it, growled at him, and, upon the officer's drawing a revolver, sprang into the sleigh, and again began growling; that thereupon the officer fired at and probably struck, but did not much injure the animal, which, however, became quiet; that soon afterwards, on the same day, defendant, in a conversation in Anderson's store, was informed of the biting of Munson and the attack upon Anderson, and finally paid Munson five dollars to settle the matter.

Against objection, plaintiff was permitted to show that defendant was "in good circumstances as to property."

The testimony for defendant tended to show that at the time when plaintiff was bitten, a stick about five feet long, used as a whip, lay in the ·defendant's sleigh, and projected about a foot or eighteen inches beyond the rear end of it; that plaintiff, as he passed it, took hold of the whip with his left hand, and drew it around the end of the sleigh, and ·the whip either fell out, or was thrown down upon the ground by the plaintiff, just as the dog seized him. Defendant also intro· duced a large amount of testimony to show that the dog was a "faithful and peaceable watch dog;" that· he had bought him as such about fifteen months before the injury to plaintiff; that he took the dog with him into the village to guard the property in his sleigh, because he had several times previously had valuable articles stolen from vehicles left standing in the streets; that the dog, when left in charge of the vehicle, would remain in or near it, and was dangerous to any one who offered to disturb it or its contents, but would not leave it or attack any person unless disturbed or irritated; that frequently when the dog followed defendant's team to Columbus, he had been snow-balled by boys in that place; that on the day when Munson was bitten, defendant had first hitched his team at the lower end of the street, near a school house; that as he hitched, the school let out, and the boys began to snow-ball the dog; that defendant told them they had better stop, or the dog would bite them; that he then took his team away, and hitched it elsewhere, and an hour or two later drove it to the point near Anderson's store where it stood when Munson was bitten; and that'he saw no snow-balling at this last place. Defendant also testified: "He has been a peaceable watch dog since I have had him, always. I never knew him to molest any one, except at that time in Columbus." He, however, added that on another occasion, in

Columbus, some boys having commenced snow-balling the dog as he lay on defendant's wagon, "he was all peaceable till the snow-balling commenced, and then he ran after the boys, and would have bitten one of them, I guess, if it hadn't been for me. I came out of a saloon and stopped him."

The testimony for defendant further tended to show that the place where plaintiff was attacked was the principal business part of the village of Waterloo; and that during the three or four hours while defendant's sleigh was standing there on that occasion, probably thirty or forty persons passed by it, and the dog remained perfectly quiet except when he attacked the plaintiff.

There was some rebutting evidence as to plaintiff having meddled with defendant's whip. The evidence as to the amount of sickness and pain which plaintiff suffered in consequence of the biting, need not be stated here.

The jury were instructed that the recovery in this case could only be "for the pain and suffering which the child had endured;" and not for loss of his time, damage to his clothing, or expense of medical attendance; that, as the facts that the dog was the property of the defendant, and that he bit the plaintiff, were not contested, the main question for them was, whether defendant knew at the time that the dog had bitten other persons; that if he knew that fact, his allowing the dog to run at large, unmuzzled, and not taken care of in any such way as to secure others from being bitten, was negligence, such as would entitle plaintiff to recover; that if the jury should find "that this little lad, hardly old enough to know whether it would be wrong to meddle with the sleigh, did meddle with it, by taking out a whip or doing anything of that sort, it would be no defense whatever to this action;" that if they found for the plaintiff, they should assess his damages at such sum as they should deem reasonable under all the circumstances of this case, and might also include exemplary damages if they found that defendant, in allowing his dog to run at

large without muzzling, was guilty of gross and criminal negligence — such as evinced on his part a wanton disregard of the safety of others.

Verdict for plaintiff, awarding him $250 damages. A motion for a new trial, on the grounds of error in the instructions, insufficiency of evidence, and excessive damages, was denied ; and defendant appealed from a judgment on the verdict.

*S. M. Cone* and *D. Hall*, for the appellant :

1. The charge of the court was to the effect that a boy seven years old cannot be guilty of wrong, or be in fault, so as to defeat or in any way affect the recovery in an action for injury brought on himself by his own willful trespass, wrong or reckless mischief. This was clearly error. *Lynch v. Smith*, 104 Mass., 52 ; *Munn v. Reed*, 4 Allen, 431 ; *Wright v. R. R. Co.*, id., 283 ; *Holly v. Boston Gas Light Co.*, 8 Gray, 123 ; *R. R. Co. v. Stout*, 17 Wall., 657 ; Shearm. & Redf. on Neg., § 49, and note, and cases there cited ; *Achtenhagen v. Watertown*, 18 Wis., 331 ; *Huchting v. Engle*, 17 id., 230 ; *R. R. Co. v. Gladmon*, 15 Wall., 401. 2. This was not a case for exemplary damages. The watch dog was legitimately used to prevent theft. The plaintiff was bitten because he was a trespasser. Defendant had a right to expect from him and from all others such care as they were capable of. His motive was praiseworthy. A muzzled dog would be a poor protection against adroit thieves. There was no evidence to show "gross and criminal negligence" on defendant's part — such negligence as evinced a wanton disregard of the safety of others. *Rogers v. Henry*, 32 Wis., 327.

*Harlow Pease*, for respondent :

One who knowingly keeps a ferocious dog on his premises, is liable for injuries, even to a trespasser in the day time. *Loomis v. Terry*, 17 Wend., 496, and cases there cited. "If a dog has *once* bit a man, and the owner, having notice thereof, keeps the dog, and allows him to go about or be at his door, an action will lie against him at the suit of a person who is

bitten, although it happened by such person treading on the dog's toes." *Smith v. Pelah*, 2 Strange, 1264. It is not necessary in such case to show that the dog had bitten another person before biting the plaintiff; but it is sufficient to show that defendant knew it had evinced a savage disposition by attempting to bite. *Worth v. Gilling*, L. R., 2 C. P., 1; *Judge v. Cox*, 1 Starkie, 285.

COLE, J. The counsel for the defendant relies upon three exceptions, which were taken on the trial, to show error on the part of the court below in its rulings. And first, it is insisted that there was error in that portion of the charge in regard to contributory negligence by the child. Upon that question the court gave substantially this instruction: that if the jury should find from the testimony that the lad was meddling with the sleigh of the defendant where the dog was at the time, it would not be a defense, because the negligence of the defendant's act consisted in allowing the animal to run at large unmuzzled, knowing that the dog had been accustomed to bite other individuals, if that was a fact, and he did know it. And the jury were told that if they were satisfied that the little lad — hardly old enough to know whether it would be wrong to meddle with the sleigh — did meddle with it, and if the lad meddled with it by taking out a whip, or doing anything of that sort, it would be no defense to the action.

The counsel claims that if the boy was committing an act of trespass upon the defendant's sleigh, which was being guarded by the dog, as by meddling with a whip lying in the sleigh, or was interfering with the property in any way, this would protect the defendant from liability, even though he knew the dog was accustomed to bite persons. For, he says, it was the duty of the child to keep away from the sleigh, and not expose himself to be bitten by a fierce dog guarding it.

We are quite unable to adopt this view as to the measure of liability which the law imposes upon the defendant. The child

was alone, and, in view of his age and situation, could not reasonably be expected to exercise that degree of care and vigilance which an adult would, in the presence of such an animal. If he did meddle with the whip, "through his childish instincts and thoughtlessness," as some of the witnesses say he did, it was what might have been anticipated under the circumstances. There is quite a conflict in the testimony, whether there was any such whip in or about the sleigh; and also, as to whether the dog was in the sleigh at the time, or sitting on the ground by it, when he attacked the boy. The instruction, of course, assumes that the jury might find there was such a whip in the sleigh where the dog was at the time, and that the boy did meddle with it; and yet the ruling of the court is, that this did not excuse the defendant, and that he was responsible for the injury done by his dog, if he knew it was accustomed to bite persons. It seems to us that the ruling of the court was correct, and that it was great negligence in the defendant to leave his dog, which was a dangerous animal, in that place, where it was extremely probable he would do some harm. We think that when the owner has knowledge of the ferocious disposition of his dog — has notice that the animal has left the sleigh which he was guarding, while it was standing in a public street, and has attacked persons passing along the highway (as it appeared this dog had done at least on one occasion, but a few weeks before, in the village of Columbus, as the defendant knew or should have known), — then it is the duty of the owner to keep the dog under safe restraint at home; or, if he takes him abroad with him for the protection of his property, he must see to it that the animal is so muzzled or secured that he cannot bite and injure children and persons passing along the street, or resorting to the wagon or sleigh where the dog may be, for amusement and play. This obligation or duty the law imposes upon the owner of every dangerous animal; and many cases of the highest authority hold the owner to a stricter re-

sponsibility. We are not, however, called upon to go beyond the facts of this case. Here the dog was left unsecured and unmuzzled, in the sleigh, which was standing near the sidewalk in the village. It was where children naturally would be passing and playing. The defendant should have anticipated the danger when he left the dog there, and have taken some precautions to guard against it. It is no sufficient answer to say that the dog was left in that situation for the protection of the sleigh, and that if the child had exercised care and watchfulness, and kept at a distance from the sleigh, he would not have been injured. It is idle to claim that the defendant had the right, for the protection of his property, to leave a fierce dog guarding it in a public street, unsecured. And surely this child did not forfeit all claims to protection because he attempted to pull a stick from the sleigh, and did not carefully keep away from the place where the dog was. A man is not permitted, for the protection of his property, under such circumstances, to use means endangering the life or safety of a human being. Children playing in the street are entitled to consideration, and certainly are entitled to protection from a ferocious dog left by the owner there unmuzzled. Nor can the owner of such a dog exempt himself from liability in case of an injury inflicted on a child, because it appears that the child did not act with the discretion and judgment of a person of mature years. *Munn v. Reed*, 4 Allen, 431–433. In the case of *Brown v. Carpenter*, 26 Vt., 638, C. J. REDFIELD uses the following language, in considering the sufficiency of a plea which put the defense for killing a dog upon the ground that the animal was *hostis communis*, a common enemy, which might be killed by any one if found at large. He says: " We think that a ferocious and overgrown dog, known to the owner or keeper to be accustomed to bite mankind, is to be regarded as at large, within the common import of those terms in a plea in bar, when he is so far free from restraint as to be liable to do mischief to man or beast; and this such a dog is always liable to

do when not physically restrained, in the language of the judge in the court below. His being in the presence of his keeper affords no safe assurance that his known propensities will not prevail over the restraints of authority. That is the case with men often, and always liable to be with ferocious animals, as is said by our judge. I think sufficient caution has not been used ; one who keeps a savage dog is bound to so secure it as to effectually prevent it doing mischief." And, among other authorities, the learned judge cites, with approval, *Smith v. Pelah*, 2 Strange, 1264, where it was held that the master was liable for all damage done by a ferocious dog who had once bitten a man, even though it happened by such person treading on the dog's toes. And many cases treat a savage dog as an outlaw and common nuisance, liable to be killed by any one. *Brown v. Carpenter, supra; Blackman v. Simmons,* 3 Carr. & P., 138; *Sarch v. Blackburn,* 4 id., 297 ; *Hinckley v. Emerson,* 4 Cow., 351; *Loomis v. Terry,* 17 Wend., 496; *Putnam v. Payne,* 13 Johns., 312. In *Loomis v. Terry,* where the owner was held liable for damages done by his dog to the plaintiff's son, who, at the time of the injury, was committing a trespass in hunting upon his grounds on Sunday, COWEN, J., makes these remarks : " There can be no doubt that, as against a trespasser, a man may make any defensive erection, or keep any defensive animal which may be necessary to the protection of his grounds, provided he take due care to confine himself to necessity. But it has been held that in these and like cases, the defendant shall not be justified, even as against a trespasser, unless he give notice that the instrument of mischief is in the way." p. 499. This same liability has been enforced against a person keeping any other mischievous animal, with knowledge of its propensities, where it is held that he is bound to keep it secure at his peril. *Blackman v. Simmons, supra; May v. Burdett,* 9 Queen's Bench R.. 101; *Jackson v. Smithson,* 15 M. & W., 563; *Oakes v. Spaulding,* 40 Vt., 347 ; *Pickett v. Crook,* 20 Wis., 358 ; *Popplewell v. Pierce,* 10 Cush., 509. *May v. Burdett* was an action for

an injury received from a monkey, which the defendant knew to be accustomed to bite people.   After verdict, it was objected, on the part of the defendant, that the declaration was bad for not alleging negligence or some default of the defendant in not properly or securely keeping the animal.   Lord DENMAN, C. J., delivering the judgment, said : "A great many cases and precedents were cited upon the argument ; and the conclusion to be drawn from them appears to us to be, that the declaration is good upon the face of it; and that whoever keeps an animal accustomed to attack and bite mankind, with knowledge that it is so accustomed, is *prima facie* liable in an action on the case at the suit of any person attacked and injured by the animal, without any averment of negligence or default in the securing or taking care of it.   The gist of the action is the *keeping* the animal after *knowledge* of its mischievous propensities."   In other words, the owner is held bound so to secure it as to keep it from doing an injury, *at his peril.*   The law upon this subject is so fully expounded in the above cases, and in *Card v. Case*, 5 Man., Gran. & S., 622 (57 Eng. C. L.), that no further reference to authorities is deemed necessary.   It will be seen that the law made it the duty of the defendant to use due and reasonable care and precaution in keeping his dog, knowing its savage disposition ; and he had no right to leave him unsecured in a public street where children were passing. And the fact that the child in this case was meddling with a whip in the sleigh where the dog was at the time, does not protect the owner from liability.

Another portion of the charge excepted to was the direction of the court in respect to exemplary damages.   On this point the court instructed the jury that they might include in their verdict punitory or exemplary damages, providing they were satisfied from the evidence that the defendant had been guilty of gross and criminal negligence in allowing the dog to run at large without being muzzled — that is, had been guilty of such negligence as evinced a wanton disregard of the safety of others.

Meibus vs. Dodge.

This instruction, as a proposition of law, was fully warranted by the decision in *Pickert v. Crook, supra.* And that there was evidence to which such an instruction was fairly applicable, we think cannot be denied in view of what occurred at Columbus. The dog on that occasion evinced a most savage disposition, of which the defendant had notice. The counsel for the defendant argues that it was legitimate and proper for the owner, after a knowledge of that occurrence, to take the dog with him into a village to watch his sleigh and prevent theft. The law is otherwise settled.

If the case was one for exemplary damages in any aspect, there was no error in asking the witness as to the pecuniary circumstances of the defendant.

We think the judgment of the circuit court must be affirmed.

*By the Court.* — It is so ordered.

RYAN, C. J., took no part in the decision of this cause.

Upon a motion for a rehearing, the appellant's counsel insisted that the question of plaintiff's capacity, as bearing upon the defense set up, was properly one of fact for the jury, and was improperly taken from the jury by the trial court; and they cited to this point, in addition to cases mentioned in their former brief, *Pa. R. R. Co. v. Lewis*, Am. Law Reg. for November, 1875, p. 665, and distinguished the case of *Loomis v. Terry*, 17 Wend., 496, as one where the verdict covered every question of fact in the case. They also contended that if the question of punitory damages was properly allowed to go to the jury at all, then the evidence showing the conduct of plaintiff which provoked the attack upon him should have been allowed to go to the jury for the purpose of mitigating the punitory damages (*Moreley v. Dunbar*, 24 Wis., 183); and that the jury were really forbidden to consider this evidence, by the instructions.

The motion for a rehearing was denied.