JONES, Respondent, v. FISHER and wife, Appellants.

*No. 184. Argued March 5, 1969.—Decided April 1, 1969.*
(Also reported in 166 N. W. 2d 175.)

212

For the appellants there was a brief by *Schlotthauer, Johnson & Mohs* of Madison, and oral argument by *Conrad H. Johnson.*

For the respondent there was a brief by *Jack McManus* and *Larry A. Haukom,* both of Madison, and oral argument by *Mr. McManus.*

BEILFUSS, J. The defendants raise four issues:

1. Are the compensatory damages excessive?

2. Are the punitive damages excessive?

3. Was it error to require the defendants to testify as to their net income for 1966 and 1967?

4. Was it error to permit plaintiff's counsel to read portions of her adverse examination into evidence before the jury?

The defendants do not raise any issue as to the assault and battery finding. Their main thrust is that

the damages, both compensatory and punitive, are excessive and ask this court to apply the *Powers* rule [1] to fix a reasonable amount as an option to a new trial.

The plaintiff contends that the defendants cannot ask for an application of the *Powers* rule on appeal because it was not requested in the trial court in motions after verdict.

The motions after verdict did set forth the defendants' contention that the damages were excessive and asked a new trial on that ground.

While it is undoubtedly better practice to ask the trial court to find the reasonable amount for damages, failure to do so is not fatal. If the motion asks for a new trial because of the excessive damages, the trial court or this court can give the plaintiff an option to take a reduced amount found to be reasonable or a new trial on damages without the formality of specifically asking the court to do so. To do otherwise might in many instances defeat the purpose of the court to avoid new trials—if the plaintiff is willing to accept the lesser amount found by the court to be reasonable.

In this instance no harm was done by not specifically asking for an application of the *Powers* rule. This is not a case where the trial court might have acted for the appellants if it had an opportunity to do so. Here the trial court found the damages were not excessive and there was no occasion to apply the rule.

The jury awarded the plaintiff $1,000 compensatory damages. Compensatory damages are to compensate the injured party for his actual damages and not as punishment of the defendant. If there is personal injury the award should include compensation for loss of earnings, pain and suffering, and permanent or future disability if such appears. The award can also include compensation for mental suffering such as humiliation,

[1] *Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 102 N. W. 2d 393.

shame, embarrassment, and fear. Granted, mental suffering is many times difficult to evaluate in terms of monetary awards, nevertheless, it is compensable.

Considering the testimony and other proof in the record most favorable to the plaintiff,[2] we find that plaintiff was subjected to a painful physical assault for a very few minutes at the most. She testified her arms and back hurt while she was held and that the soreness of her mouth was aggravated when the teeth were taken. There was no objective physical evidence of injury. She did not consult a physician, nor use prescriptive medicine. Her physical injury was nominal. She testified that she was nervous, humiliated and scared during the altercation at the nursing home, at the drugstore, the police station, and for about a week thereafter and still (at the time of trial) thinks about it. She was without her teeth for, at the most, an hour. Understandably she could suffer humiliation and shame during this period. Conceivably she could continue to suffer these emotions for some time thereafter, but her symptoms were all subjective and not supported by any medical testimony nor any other corroborating evidence. The lack of medical testimony or other corroborating evidence is not fatal to her claim for past suffering but it would have done much to add credence to her almost minimal testimony of her subjective emotions.

In *Makowski v. Ehlenbach* (1960), 11 Wis. 2d 38, 41–43, 103 N. W. 2d 907, we stated:

"The problem of achieving fairness in assessing damages for personal injury is fraught with difficulty. Theoretical nicety is impossible. Under our judicial system, we rely primarily upon the good sense of jurors

[2] We review the evidence anew to determine the question of excessiveness upon the basis of the rule set forth in *Burke v. Poeschl Brothers, Inc.* (1968), 38 Wis. 2d 225, 156 N. W. 2d 378; *Moritz v. Allied American Mut. Fire Ins. Co.* (1965), 27 Wis. 2d 13, 24, 133 N. W. 2d 235; *Bach v. Liberty Mut. Fire Ins. Co.* (1967), 36 Wis. 2d 72, 152 N. W. 2d 911.

to determine the amount of money which will compensate an individual for whatever loss of well-being he has suffered as a result of injury. The general rule governing the trial judge or appellate court in determining whether damages are excessive on the basis of the amount found is stated in 15 Am. Jur., Damages, pp. 621, 622, sec. 205, quoted with approval in *Bethke v. Duwe* (1950), 256 Wis. 378, 384, 41 N. W. (2d) 277, as follows:

" 'In actions sounding in damages merely, where the law furnishes no legal rule for measuring them, the amount to be awarded rests largely in the discretion of the jury, and with their verdict the courts are reluctant to interfere. As shown elsewhere, a verdict may be set aside as excessive by the trial court or on appeal when, and not unless, it is so clearly excessive as to indicate that it was the result of passion, prejudice, or corruption, or it is clear that the jury disregarded the evidence or the rules of law. . . .

" 'Since it is for the jury, and not for the court, to fix the amount of the damages, their verdict in an action for unliquidated damages will not be set aside merely because it is large or because the reviewing court would have awarded less. Full compensation is impossible in the abstract, and different individuals will vary in their estimate of the sum which will be a just pecuniary compensation. Hence, all that the court can do is to see that the jury approximates a sane estimate, or, as it is sometimes said, see that the results attained do not shock the judicial conscience.'

"We should add to the statement just quoted that there are cases where the amount of an award may not indicate prejudice, perversity, or corruption, yet is too large to be supported by the evidence. *Blong v. Ed. Schuster & Co.* (1956), 274 Wis. 237, 242, 79 N. W. (2d) 820; *Blaisdell v. Allstate Ins. Co.* (1957), 1 Wis. (2d) 19, 24, 82 N. W. (2d) 886. A jury may mistakenly assume (without supporting evidence) that there have been, or will be certain effects from an injury or fix compensation for sufficiently proved effects of injury at a figure which is beyond the range of reasonably debatable amounts. In a case where it is clear to the court that the amount awarded must necessarily reflect an allowance for the effects of injury not sufficiently proved or reflect a rate of compensation which is beyond reason, the court

will declare the damages excessive. Where the question is a close one, it should be resolved in favor of the verdict."

The trial court was of the opinion the award for compensatory damages was high but not excessive. "In view of the limited, vague and uncorroborated testimony bearing" [3] upon her mental distress, we are of the opinion the award for compensatory damages of $1,000 does "reflect an allowance for the effects of injury not sufficiently proved" and "reflect a rate of compensation which is beyond reason" [4] and, therefore, excessive. We are of the opinion that $500 is a reasonable award to Mrs. Jones for compensatory damages.

The appellants acknowledge that the court has reaffirmed its adherence to the doctrine of punitive damages. [5] They do, however, propose that the doctrine should be limited to cases of sexual assault and cases where the defendant engages in a course of dangerous conduct after he has had time to reflect upon the deleterious effects of such action. We have said the doctrine is to be retained—we are not convinced that the limitations suggested by the appellants are based on appropriate distinctions.

Punitive damages can be awarded where the defendant's transgressions are activated by a malicious motive. [6] However, punitive damages need not be limited where there is no proof of malice. In *Kink v. Combs, supra*, [7] we stated at page 79:

[3] *Lisowski v. Chenenoff* (1968), 37 Wis. 2d 610, 633, 155 N. W. 2d 619.

[4] *Makowski v. Ehlenbach, supra.*

[5] *Kink v. Combs* (1965), 28 Wis. 2d 65, 135 N. W. 2d 789; *Lisowski v. Chenenoff, supra.*

[6] *See Meshane v. Second Street Co.* (1928), 197 Wis. 382, 222 N. W. 320; Wickhem, *The Rule of Exemplary Damages in Wisconsin*, 2 Wis. L. Rev. (1923), 129, 144, 145.

[7] Footnote 5.

"The defendant claims that the question of punitive or exemplary damages should not have been submitted to the jury because defendants' acts were not activated by malice or vindictiveness. However, malice or vindictiveness are not the *sine qua non* of punitive damages.

" 'Where the defendant's wrongdoing has been intentional and deliberate, and has the character of outrage frequently associated with crime, all but a few courts have permitted the jury to award in the tort action "punitive" or "exemplary" damages, or what is sometimes called "smart money." ' Prosser, Law of Torts (2d ed.), p. 9, sec. 2.

"For the award of punitive damages it is sufficient that there be a showing of wanton, wilful, or reckless disregard of the plaintiff's rights. 6 C. J. S., Assault and Battery, p. 904, sec. 55 b (3)."

We are of the opinion that the jury could (they are not required to do so) [8] award punitive damages based upon the facts before them. The conduct of Mr. and Mrs. Fisher was illegal, outrageous and grossly unreasonable. It may be as appellants contend that they erroneously thought they had a right to take the teeth as security for their loan. Even so, it was grossly unreasonable to use the tactics they did and subject the plaintiff to this outrage.

The principal problem that confronts us is whether the damages awarded are excessive.

Punitive damages are assessed not to compensate the injured party but as a punishment to the wrongdoer and as a deterrent to others.[9]

The evidence reveals that the defendants' own property was worth approximately $75,000, subject to a mortgage of $41,000, leaving an equity of about $34,000. Their net income for the years 1966 and 1967 was about $24,000 per year. It appears as though the nursing

---

[8] *Malco v. Midwest Aluminum Sales* (1961), 14 Wis. 2d 57, 63, 109 N. W. 2d 516.

[9] *Lisowski v. Chenenoff, supra.*

home operation was a joint venture between Mr. and Mrs. Fisher. In contrasting the punitive awards with the wealth of the defendants we must either assume the award was $5,000 or consider that each owned one-half of the wealth of the parties.

In viewing the wealth of the defendants, the character and extent of their acts, and the probable motivation, and then applying the standard of punishment and deterrence, the court is of the unanimous opinion that the assessment of $2,500 as punitive damages to each defendant was excessive.

Having determined the punitive damages are excessive, we apply the *Powers* rule and give the plaintiff the option of accepting a reduced reasonable amount or a new trial on damages.

In *Malco v. Midwest Aluminum Sales, supra,* we stated, at page 65:

"It seems to us that once the jury has decided in its discretion to award punitive damages, the amount thereof must be subject to the control of the court. True, the jury need not award any punitive damages, but having done so, the amount thereof should be subject to the court's revision in the same manner as compensatory damages. It is not logical to say excessive punitive damages cannot be reduced by the court to a reasonable amount because the jury had the power to deny any amount. In such cases, the fact is the jury exercised its discretion and made an excessive award of punitive damages. We hold that the *Powers* rule extends to punitive damages and a trial court has the power to reduce the amount of punitive damages to what it determines is a fair and reasonable amount for such kind of damages."

The majority of the court is of the opinion that an assessment of $1,000 as to each defendant is a reasonable amount for punitive damages.

The appellants contend that it was error to allow the plaintiff to introduce the net earnings of the defendants as an aid to the jury in fixing the punitive damages. They contend the only admissible proof is net worth.

Net worth may not in all instances be the best measure of an individual's ability to respond in damages. We believe a more accurate gauge is his financial resources, which include his earnings as well as his net worth.[10] In some instances it may work to the defendant's advantage to show his net earnings.

Defendants' final assignment of error is that the plaintiff's counsel was permitted, over objection, to read additional portions of his own client's adverse examination to the jury as to matters "not in clarification of the portions [defendants'] counsel read" in cross-examination of the plaintiff. Although the objection was not as artfully made as it could have been, we believe it was sufficient to comply with sec. 887.12 (8), Stats., which provides as follows:

"INTRODUCING ADDITIONAL PARTS. If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce all of it which is relevant to the part introduced, and any party may thereupon introduce any other parts of said deposition relevant to the parts introduced."

The portions read by defendants' counsel as a part of his cross-examination dealt with the manner in which the defendant, Mrs. Fisher, took the teeth from the plaintiff's mouth. Plaintiff's counsel rightfully read an additional portion of the adverse examination which was relevant to parts read by defendants' counsel, however he went on to the conversation between the parties as to the repayment of the $200. This portion was not relevant to the part read by plaintiff's counsel and the objection should have been sustained. The error, however, was not prejudicial; the portions read were only repetitious of her testimony and could have had no independent prejudicial effect upon the defendants' position in the lawsuit.

[10] 25 C. J. S., *Damages*, p. 1168, sec. 126 (3); 22 Am. Jur. 2d, *Damages*, p. 420, sec. 320.

Our application of the *Powers* rule requires that the judgment be reversed and cause remanded to the trial court with the direction that the plaintiff have the option to elect to take judgment in the amounts fixed by the court in this opinion, plus taxable costs. Such election shall be made in writing within twenty days after the return of the record to the trial court. In the event the plaintiff refuses or neglects to make such election within the twenty days, the trial court shall enter an order for a new trial on the issue of damages.

*By the Court.*—Judgment reversed, and cause remanded with directions. The appellants are entitled to costs on this appeal.

ROBERT W. HANSEN, J. (*dissenting*). The majority opinion sustains the collecting of punitive damages in a case involving a one-hour deprivation of dentures. Next may come the case approving such added damages for the near-identical deed of toupee-snatching. We do not minimize the unpleasantness of an hour spent without newly acquired dentures, nor of an hour spent without the adornment of a substitute headpiece. We agree that compensatory damages for the deprivation and humiliation involved are justified. We do not agree that the added penalty of punitive or vindictive damages is also warranted in such instance. We would hold that the public interest does not require nor ought the public policy permit the awarding of punishment damages in this type of situation.

The road that has brought us to the present state of affairs in regard to punitive damages in Wisconsin courts is a long one, paved with good intentions. Over one hundred years ago, this court decreed that a plaintiff under certain circumstances could be awarded extra damages to punish the defendant in addition to those that compensated the plaintiff.[1] Early attacks upon the

---

[1] *McWilliams v. Bragg* (1854), 3 Wis. 377 (*424).

wisdom of this idea were repulsed.[2] Such punishment damages have been awarded in this state in cases involving batteries, trespass to realty, libel and slander, seduction, breach of promise, alienation of affections and other categories of tort action.[3] We find, however, no cases where victims of rapes, robberies, burglaries, forgeries or highway accidents have been given similar retributive awards.

*What is the basis?*

What is the justification in certain situations for permitting a tort-plaintiff to recover money beyond the compensatory damages established? It has been said that such punitive awards are permitted in most jurisdictions ". . . as a punishment to the defendant and as a warning and example to deter him and others from committing like offenses in the future." [4] Can it seriously be contended that such underlying justification is present in the case before us? Would not the recollection of the compensatory damages paid render very unlikely a repetition by the husband and wife here involved of the offense of denture detention? Would not the $1,000 compensatory damage award, standing alone, be a sufficient deterrent to others who might be tempted to hold dentures as security for an unpaid loan? Are we dealing here with a propensity to grab and hold upper plates

[2] Wisdom doubted but ". . . too late to overturn . . ." said Mr. Chief Justice EDWARD RYAN in *Bass v. Chicago & N. W. Ry.* (1877), 42 Wis. 654. Claim that punitive damage award constituted double jeopardy rejected. *Brown v. Swineford* (1878), 44 Wis. 282.

[3] See *Exemplary or Punitive Damages in Wisconsin* by Professor James D. Ghiardi of the Marquette University Law School, published by Callaghan & Co., Vol. 1, No. 1, Wisconsin Continuing Education Series (1961), for a comprehensive listing and analysis of all Wisconsin cases in this category. The writer of this opinion is indebted to the author of the article for providing the backdrop or frame of reference, although conclusions reached by the writer are not necessarily those of the author.

[4] 22 Am. Jur. 2d, *Damages*, p. 323, sec. 237.

that is marked either by a high rate of recidivism or contagion? Is there here present a situation that justifies the heavy-handed use of punishment to deter? We think not, particularly because we do not deal with a matter of plaintiff's rights,[5] but the question of what the public interest requires and what the public policy should permit.

### What are the limits?

While the roadway to punitive awards has been around a long time, it always has had limits since such punishment awards were first approved. It has often been said that to warrant the imposition of punitory damages, it must appear that the wrong was inflicted "under circumstances of aggravation, insult, or cruelty, with vindictiveness and malice."[6] The road was widened with the holding that, where actual malice was not present, it would be enough that there be "wanton or reckless disregard of the plaintiff's rights."[7] In a comparatively recent case, the road limits broadened, with this court approving, this statement:

" 'Where the defendant's wrongdoing has been intentional and deliberate, *and* has the character of outrage frequently associated with crime, all but a few courts have permitted the jury to award in the tort action "punitive" or "exemplary" damages, or what is sometimes called "smart money." ' Prosser, Laws of Torts (2d ed.), p. 9, sec. 2." (Emphasis supplied.)[8]

---

[5] "Plaintiff is not entitled to punitive damages as a matter of right . . ." recommended instruction to jury in *Haberman v. Gasser* (1899), 104 Wis. 98, 80 N. W. 105, as quoted in *Exemplary or Punitive Damages in Wisconsin* by Professor James D. Ghiardi, *supra,* page 17.

[6] *For example, Christensen v. Schwartz* (1929), 198 Wis. 222, 227, 222 N. W. 231, 223 N. W. 839.

[7] *Pickett v. Crook* (1866), 20 Wis. 377 (*358) ; *Meibus v. Dodge* (1875), 38 Wis. 300.

[8] *Kink v. Combs* (1965), 28 Wis. 2d 65, 79, 135 N. W. 2d 789.

Elsewhere it has been said that punitive damages "are imposed in view of the enormity of the offense." [9] Under any of these tests, can it be fairly concluded that the unfortunate altercation between the parties here involved moves into that category of seriousness that warrants awarding of punishment damages?

Unless malice is equated with momentary loss of temper or is to be presumed from an act of poor judgment, there is no element of malevolence or vindictiveness present here. The bicuspid *corpus delicti* is present only because of an interest-free loan made by defendants to plaintiff. Granted that they expected her to remain in their employ and to pay them back from her earnings, goodwill, not ill will is evidenced by the transaction, the advancing of the $200 to pay the dentist.

Conceding that the taking of the upper plate which belonged to the plaintiff, even if paid for by the defendants, was an invasion of her rights, can it be termed "wanton or reckless?" It is evident that there was a mutually cordial, supportive and agreeable relationship between the old couple and the young lady who worked for them in their nursing home, almost up to the incident here involved. It was the lady's decision, loan unpaid, to go to work for someone else that precipitated a change in the relationship. Is this flare-up of emotions, this shift in mood, this disappointment of expectations on the part of the employing couple a foundation for a finding of wanton and reckless disregard of the rights of another? If so, the most trivial of altercations and mildest of scuffles dons the garment of wantonness or recklessness.

Given the unfortunate escalation of unpleasantness in the argument of the parties, can its climax, the grabbing the dentures, be found to have the "character of outrage frequently associated with crime?" If the police had been called to stop the argument, instead of being called to

---

[9] 22 Am. Jur. 2d, *Damages*, p. 324, sec. 237.

get the plate back, would they have made an arrest? If they had, would a district attorney have issued a state warrant for battery, or even for disorderly conduct, on the basis of what had taken place? If he had, would a misdemeanor court have considered the situation here to involve violation of a criminal statute or as a falling-out among friends to be settled by an apology and a handshake? Is this the type of situation that Prosser contemplated when he wrote of an "outrage frequently associated with crime?" We think it falls short of being that. Certainly, if punitive damages are to be imposed "in view of the enormity of the crime," this is no situation justifying their imposition. We do not attach great weight to the fact that the denture-deprived plaintiff went to the police to get her denture back, not to get a warrant. This is an unfortunate but predictable concomitant of placing the weapon of punishment to deter in private hands. Why should the plaintiff seek a warrant when her case would not be aided by the securing of a public sanction or penalty prior to or in addition to the private retribution she was seeking?

We have grave doubts about the public policy involved in thus placing in private hands the use of punishment to deter. Some observers challenge the right or efficacy of even the state using punishment as punishment to deter.[10] At least in the public administration of criminal justice there are clearly defined crimes, clearly delineated penalties, constitutional protections and in-built restraints.

However, we need not challenge the whole idea of placing the right to seek retribution, in addition to compensation, in private hands, to challenge the applicability of such concept in the case before us. Whether or not it operates to deter scalpings, it ought not be used in the effort to deter toupee dislodgings. The concept of punitive damages, it has been said, is "not a

---

[10] *See The Crime of Punishment* by Dr. Karl Menninger, New York, The Viking Press, 1966.

favorite of the law," should be "exercised with great caution," and properly be "confined within the narrowest limits." [11] This case, it appears to the writer, is well beyond the limits.

So we would sustain the admittedly high award of $1,000 for compensatory damages, as including every ounce of hurt and humiliation that can be placed upon the scales, and strike the awards for punitive damages as not being warranted by the facts of this case. I am authorized to state that Mr. Justice LEO B. HANLEY joins in this dissent.

[11] 22 Am. Jur. 2d, *Damages*, p. 326, sec. 238, and cases cited therein at footnotes 19, 20 and 1.