Kay L. FRANZ, Plaintiff-Appellant,†

v.

Rick M. BRENNAN, Douglas Brennan, Alice
Brennan and Blue Cross & Blue Shield United
of Wisconsin Defendants,

STATE FARM MUTUAL INSURANCE
COMPANY, Defendant-Respondent.

Laurie A. OTTO, Plaintiff-Appellant, †

Warren OTTO, Plaintiff,

v.

Rick M. BRENNAN, Douglas Brennan and Alice
Brennan, Defendants,

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, Defendant-
Respondent.

---

† Petition to review granted.

541

Court of Appeals

*No. 87–2427. Submitted on briefs June 13, 1988.—Decided September 21, 1988.*

(Also reported in 431 N.W.2d 711.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Keith G. Ondrasek* of Chilton and *Bonk, Lutz, Burnett & McDermott* of Chilton.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Robert L. McCracken* and *Joan Ravanelli Miller* of *Nash, Spindler, Dean & Grimstad* of Manitowoc.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J. This cause of action arose out of an automobile accident where Rick Brennan (Rick) was found causally negligent. His parents, Douglas and

Alice Brennan (the Brennans), were held liable for the plaintiff's damages under the sponsorship statute, sec. 343.15(2), Stats., as Rick was a minor at the time of the accident.

The following issues are raised: (1) whether the trial court erred in finding the evidence insufficient to support an award of punitive damages; (2) whether evidence of the Brennans' wealth was improperly excluded; (3) whether the trial court erred in failing to inform the jury of the availability of insurance coverage for the punitive damages; and (4) whether the evidence is sufficient to support the jury's award for future medical expenses to Kay Franz.

We conclude that: (1) sufficient evidence supports the punitive damages award; (2) the Brennans' wealth was properly excluded; (3) the issue regarding jury instruction was waived; and (4) the evidence supports the amount of future medical expenses awarded by the jury. The judgments are therefore affirmed in part and reversed in part.

## FACTS

In December of 1984, Franz was a passenger in the front seat of a vehicle driven by Laurie Otto. Three other passengers were in the back seat. There were also three passengers in the automobile driven by Rick.

While driving eastbound on Highway JJ, Otto noticed Rick's car ahead of her and flicked her headlights. Rick pulled over to the side of the road and Otto pulled abreast and slightly ahead of him. There was some conversation between the occupants of the cars regarding plans for the evening and Otto started to pull away. Jennifer Weimer, a passenger in Otto's

car, testified that as they pulled away, she saw Rick leave his car and strike the Otto vehicle with his fist. Lisa Zimmerman, a passenger in Rick's car, testified that Rick "wasn't happy" with Otto and was annoyed at being pulled over.

A short distance from this incident, the occupants of the Otto vehicle noticed Rick's car approaching rapidly from the rear. Otto testified that she was in her own lane of travel and Rick came up straight behind them until the point of impact. The plaintiff's accident reconstruction engineer estimated the point of impact to be seventeen inches to the right of the centerline. He also estimated Rick's speed to be between 84 and 98 miles per hour and estimated Otto's maximum speed to be 60 miles per hour.

After impact, the Otto vehicle collided with a guardrail on the right side of the road, crossed to the left side, entered the ditch, struck a telephone junction box and rolled over onto its top. Franz testified that while at the scene of the accident, she spoke to Julie Meidl, Rick's girlfriend and passenger at the time and later his wife. Franz testified that Meidl told her that Rick had said, "[T]hat Otto, she thinks she has such a fast car, I'll show her." Both Franz and Otto suffered injuries. Additional facts will be stated as necessary.

## PUNITIVE DAMAGES

The first issue is whether the evidence is sufficient to support punitive damages. The jury awarded $1500 in punitive damages, but the trial court dismissed the claim for punitive damages on the grounds that such an award was inconsistent with *Brown v.*

*Maxey,* 124 Wis. 2d 426, 369 N.W.2d 677 (1985), and inconsistent with the physical facts of the case.

■

Punitive damages may be awarded if the plaintiff proves by clear and convincing evidence that the defendant's conduct was willful, wanton or in reckless disregard of the plaintiff's rights. *Id.* at 433, 369 N.W.2d at 681. An award of punitive damages will be upheld on appeal if there is any evidence from which the jury could have concluded that the plaintiff met the above burden of proving that the defendant's conduct was outrageous. *Id.* We must construe the evidence most favorably to the jury verdict. *Id.*

The defendants take the position that the punitive damages claim must fail because there is a lack of evidence that Rick was under the influence of alcohol, that he deliberately caused the accident, or that he was angry. As to the first two arguments, we note that proof of neither is required to show punitive damages. The plaintiffs sought to show that Rick had been drinking and that the accident was either deliberate *or* in reckless disregard of the plaintiffs' rights. The latter is sufficient to support an award of punitive damages. *Id.* at 433–34, 369 N.W.2d at 681–82.

Regarding Rick's anger on the night of the accident, the record shows sufficient testimony from which the jury could infer that Rick's state of mind was agitated. In addition to the facts set out above, there was testimony that he "bumped" fenders with another car earlier in the evening while leaving a parking space and that he was involved in a brief argument at a party during which he had to be physically restrained.

The trial court's conclusion that *Brown v. Maxey* would not allow punitive damages in this case was premised upon its opinion that Rick's conduct evinced a high degree of negligence but not recklessness. We conclude that sufficient evidence exists from which the jury could conclude that Rick acted in a willful, wanton or reckless manner. Rick's high speed and the point of impact right of the centerline could by themselves indicate a reckless indifference to the plaintiff's rights. Although much of the evidence was disputed, the question is whether clear and convincing evidence supports the jury's verdict, not whether such evidence supports the opposite conclusion. *See Fehring v. Republic Ins. Co.,* 118 Wis. 2d 299, 305–06, 347 N.W.2d 595, 598 (1984). We therefore reverse that part of the trial court's judgment which overturned the jury's verdict on punitive damages.

## EVIDENCE OF WEALTH

The next issue is whether the trial court erred when it excluded evidence of the Brennans' wealth. Rulings on admissibility of evidence are within the discretion of the trial court. *Chomicki v. Wittekind,* 128 Wis. 2d 188, 195, 381 N.W.2d 561, 564 (Ct. App. 1985). Abuse of discretion occurs when the trial court fails to: (1) examine the relevant facts; (2) apply a proper standard of law; or (3) use a demonstrated rational process. *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175, 184 (1982).

At a pretrial hearing on this issue, the trial court was presented with the relevant facts. The applicable law was also discussed, including the following princi-

ples. In calculating punitive damages, the wealth of the defendant is a factor for consideration. *Brown*, 124 Wis. 2d at 438, 369 N.W.2d at 684. Wisconsin created an exception to this rule in *McAllister v. Kimberly-Clark Co.*, 169 Wis. 473, 173 N.W. 216 (1919), where evidence of wealth was held inadmissible when two defendants were involved. *Id.* at 475–76, 173 N.W. at 217.

The Brennans sought to have evidence of their wealth excluded under the *McAllister* rule or, in the alternative, under a public policy analysis. The Brennans reasoned that the purpose of punitive damages was to punish the wrongdoer; because their liability stemmed from sec. 343.15(2), Stats.,[1] and not any wrongdoing, their wealth should not be considered.

The trial court, although recognizing the validity of the *McAllister* rule, ruled on the public policy ground and excluded the evidence. We decline to rule on the public policy matter as that is more appropriately left to the supreme court. *Cf. State v. Grawien*, 123 Wis. 2d 428, 432, 367 N.W.2d 816, 818 (Ct. App.

---

[1] Section 343.15(2), Stats., (renumbered sec. 343.15(2)(b) by 1987 Wis. Act 355, effective May 3, 1988), reads as follows:

> (2) Any negligence or willful misconduct of a person under the age of 18 years when operating a motor vehicle upon the highways is imputed to the parents where both have custody and either parent signed as sponsor, otherwise, it is imputed to the adult sponsor who signed the application for such person's license. The parents or the adult sponsor is jointly and severally liable with such operator for any damages caused by such negligent or wilful misconduct.

The defendants did not argue, at trial or on appeal, that the Brennans were not liable for punitive damages under this statute. Their position was that the Brennans would ultimately be liable for punitive damages if they were assessed against Rick. We do not decide whether such liability is contemplated by sec. 343.15(2).

1985). However, we uphold the trial court's exclusion under the *McAllister* rule. *Cf. State v. Alles,* 106 Wis. 2d 368, 391, 316 N.W.2d 378, 388 (1982) (holding that we will affirm a decision which was right even if based on the wrong reason).

The plaintiffs contend that the present case should be distinguished from the other cases which rely on *McAllister.* This distinction, they argue, is that the *McAllister* rule is invoked when there are multiple defendants; here, Rick's conduct is imputed to his parents under sec. 343.15(2), Stats. Therefore, the plaintiffs conclude, there is really only one defendant.[2]

This distinction does not persuade us. The justification for the *McAllister* rule was most clearly stated in *Ogodziski v. Gara,* 173 Wis. 380, 181 N.W. 231 (1921).

> [I]n the case of two or more defendants the reception of such testimony [on their wealth] is error on the ground that evidence as to the financial ability of one affects the amount of punitory damages assessed against all, and hence, since each one is liable for the whole judgment, he may be unjustly mulcted in damages because of the wealth of a codefendant, though he himself may be a poor man.

*Id.* at 381, 181 N.W. at 231.

■

Thus, it is the bare fact of joint liability for punitive damages which militates against allowing evidence of wealth. The justification is not premised

---

[2]We think the plaintiffs' argument may prove too much. If there is really only one defendant, there seems to be no justification for putting into evidence the wealth of all three defendants.

on how the liability arose—joint tortfeasors, successive tortfeasors, or codefendants through imputation of liability. We see no reason not to follow the *McAllister* rule as it was most recently followed in *Meke v. Nicol,* 56 Wis. 2d 654, 658–59, 203 N.W.2d 129, 132 (1973), and discussed in *Fahrenberg v. Tengel,* 96 Wis. 2d 211, 224–25, 291 N.W.2d 516, 522 (1980). Because the Brennans and Rick were jointly and severally liable for the punitive damages,[3] evidence of wealth was properly excluded due to the potential prejudice to the poorest defendant.[4]

## JURY INSTRUCTIONS

The plaintiffs next argue that the trial court should have instructed the jury that insurance coverage was available for the punitive damages claim. Without addressing any merits of this issue, we turn to sec. 805.13(3), Stats., which provides that the "[f]ailure to object at the [instruction and verdict] conference constitutes a waiver of any error in the proposed instructions or verdict." During the conference, counsel for the plaintiffs did not propose an additional jury instruction to cover this issue, nor was an objection made after the reading of the instruction. The first time an objection was made was in a post-verdict motion. Since the enactment of sec. 805.13(3), an objection to the court's failure to give an instruc-

[3]*See supra* note 1.

[4]The plaintiffs also cite to *Jones v. Fisher,* 42 Wis. 2d 209, 219–20, 166 N.W.2d 175, 181 (1969), as a case which limited the *McAllister* rule. We do not agree. *Jones* allowed evidence of the value of joint assets held by the husband and wife, both tortfeasors. The case before us presents no evidence of assets held jointly by Rick and the Brennans. Nor does it appear that the *McAllister* rule was argued to the court in *Jones.*

tion cannot be made for the first time in a post-trial motion. *Durham v. Pekrul,* 104 Wis. 2d 339, 347, 311 N.W.2d 615, 618 (1981). The issue is therefore waived.

## FUTURE MEDICAL EXPENSES

■

Finally, Franz alleges error in the trial court's reduction of her damages for future medical expenses from $10,000 to $3720. Again, the standard is whether any credible evidence supports the jury verdict. *Bleyer v. Gross,* 19 Wis. 2d 305, 307, 120 N.W.2d 156, 158 (1963). An award of future medical expenses requires expert testimony as to: (1) the existence of permanent injuries requiring future treatment; and (2) the cost of such treatment. *Id.* at 311, 120 N.W.2d at 159–60.

The testimony in this case can be summarized as follows. Both Franz's general practitioner and her chiropractor testified to the requisite probability that her residual problems with her spine are permanent. Dr. Ronald J. Ziolkowski, the chiropractor, testified that Franz would continue to need supportive or maintenance care for a minimum of ten to fifteen years. He testified that such care would cost $204 a year for the first five years, $240 a year for the next five, and $300 a year for the next five. The total for fifteen years would be $3720. There was also testimony that Franz's life expectancy was 59.8 years at the age of 20.

The trial court's decision to reduce the $10,000 award to $3720 was based on its opinion that there was "little if anything in the record to indicate what the costs would be" after the first fifteen years as well as "little if any testimony as to the need for such care." The trial court also noted that although the

evidence represented the minimum, this did not give the jury "an opportunity for an infinite amount at the other end of the scale."

Upon examining Wisconsin case law, we conclude that the evidence adduced at trial was sufficient to support an award of $10,000 for future medical expenses. *Bleyer* is particularly instructive.

In *Bleyer,* the doctor testified that the plaintiff probably required continued medication, that her disability was permanent, and that the medical costs would probably be $200 to $250 a year. *Bleyer,* 19 Wis. 2d at 310, 120 N.W.2d at 159. On that basis, the jury awarded $7500 and both the trial court and the supreme court upheld the award.

In the case before us, there was also expert testimony that Franz required continued treatment, that her condition was permanent, and that the costs would be anywhere from $204 to $300 a year. On those facts, the jury could award $300 a year for twenty-one years beyond the fifteen-year minimum and still be well within Franz's life expectancy.

We agree with the trial court that little testimony existed on the expenses after fifteen years other than the permanency of Franz's condition and the estimated costs per year during the minimum treatment period. However, the standard is whether "any evidence supports the verdict." *Id.* at 307, 120 N.W.2d at 158. We further agree that the jury may not award an infinite amount; however, the jury's award of $10,000 has a basis in the evidence and, as stated by the trial court, is "not the result of perversity, prejudice or error committed during the trial."

We therefore reverse the trial court's post-verdict rulings which eliminated punitive damages and re-

duced the damages for future medical expenses. We affirm the trial court's exclusion of evidence regarding the Brennan's wealth. The alleged error regarding jury instructions is deemed waived.

No costs to either party.

*By the Court.*—Judgments affirmed in part and reversed in part.